HILBER, Plaintiff in error, v. STATE, Defendant in error. [Case No. 76–624–CR.]

MAYES, Plaintiff in error, v. STATE, Defendant in error. [Case No. 77–391–CR.]

Supreme Court

*Nos. 76–624–CR, 77–391–CR. Submitted on briefs January 9, 1979.*
*—Decided May 1, 1979.*

(Also reported in 277 N.W.2d 839.)

For the plaintiff in error the cause was submitted on the briefs of *Howard B. Eisenberg,* state public defender, and *Melvin F. Greenberg,* assistant state public defender. [Case No. 76–624–CR.]

For the defendant in error the cause was submitted on the brief of *Bronson C. La Follette,* attorney general, and *Marguerite M. Moeller,* assistant attorney general. [Case No. 76–624–CR.]

For the plaintiff in error the cause was submitted on the brief of *Howard B. Eisenberg,* state public defender, and *Mark Lukoff,* first assistant state public defender. [Case No. 77–391–CR.]

For the defendant in error the cause was submitted on the brief of *Bronson C. La Follette,* attorney general, and *Nadim Sahar,* assistant attorney general. [Case No. 77–391–CR.]

SHIRLEY S. ABRAHAMSON, J. The sole issue presented on appeal is the constitutionality of sec. 54.03(1),

Stats. 1975, which provides that youthful offender status cannot be granted to a person found guilty of a violation of law for which the maximum penalty provided is life imprisonment. The trial courts sustained the validity of the statute. We affirm the judgments and orders.

Defendant Jesse Ray Hilber was convicted of the first-degree murder of his father. Defendant James Mayes was convicted of the first-degree murder of the victim he was trying to rob. Each defendant was under the age of eighteen at the time he was charged with first-degree murder. Pursuant to sec. 48.18, Stats. 1975,[1] in each case the jurisdiction of the juvenile court was waived and the matter was tried in criminal court. Each defendant was sentenced to life imprisonment, the statutory penalty for first-degree murder, sec. 940.01, Stats., and each defendant moved the respective court to vacate the judgment of conviction and the sentence and to consider committing the defendant under the provisions of the Youthful Offenders Act ch. 54, Wis. Stats.[2] Each court denied the defendant's motion to vacate the sentence, on the ground that the Youthful Offenders Act by its express terms did not apply to persons found guilty of crimes for

---

[1] Sec. 48.18, Stats. 1975, provides:

"**48.18 Jurisdiction of criminal and civil courts over children 16 or older.** Except as provided in s. 48.17, the criminal and civil courts shall have jurisdiction over a child 16 or older who is alleged to have violated a state law or a county or municipal ordinance only if the juvenile court judge deems it contrary to the best interest of such child or of the public to hear the case and enters an order waiving his jurisdiction and referring the matter to the district attorney, corporation counsel or city attorney, for appropriate proceedings in a criminal or civil court. In that event, the district attorney, corporation counsel or city attorney of the county or municipality shall proceed with the case in the same manner as though the jurisdiction of the juvenile court had never attached."

[2] The legislature repealed Chapter 54, Stats. 1975, in Ch. 418, sec. 377, Laws of 1977. The repeal became effective July 1, 1978. *See* Ch. 418, sec. 930(18)(b), Laws of 1977.

which the maximum penalty is life imprisonment. Sec. 54.03(1), Stats. 1975.[3]

The Youthful Offenders Act provides "an alternative to procedures in the criminal code relating to conviction and sentencing." Sec. 54.01(2), Stats. 1975. A young person adjudged a youthful offender under the Act is not given the status of a convicted criminal;[4] he or she is subject to procedures of probation and commitment to the Department of Health and Social Services which differ from procedures applicable to convicted criminals,[5] is separated from convicted criminals during the course of those procedures,[6] and after discharge is not disquali-

---

[3] Sec. 54.03(1), Stats. 1975, provides:

"54.03 **Determination of youthful offender status.** (1) When a person under the age of 21 years at the time of the commission of the offense for which the person has been found guilty in a court of a violation of law for which the maximum penalty provided is imprisonment in the state prison for a period less than life, the person shall be determined to be a youthful offender if:

"(a) The person has been waived under s. 48.18 and is determined to be a person who will benefit and society will not be harmed by disposition as a youthful offender; or

"(b) The person is determined to be a person who will benefit and society will not be harmed by disposition as a youthful offender."

[4] Sec. 54.03(4)(a) and (c), Stats. 1975, provides:

"(4)(a) If the court determines that the person will benefit from the disposition as a youthful offender and society will not be harmed thereby, it shall make a finding to that effect, adjudge the person to be a youthful offender, and shall either order the person to be placed on probation to the department under s. 54.04 or enter a judgment committing the person to the department under s. 54.07.

". . .

"(c) If the court does not find the person to be a youthful offender it shall enter a judgment of conviction and proceed under chs. 972 and 973."

[5] See secs. 54.04 through 54.10, Stats. 1975.

[6] Sec. 54.17(6), Stats. 1975, provides:

"(6) After July 1, 1977, the department shall maintain full separation of criminal and youthful offenders."

fied from securing occupational and professional licenses or from entering public or private employment and has the right to vote and to hold public office.[7]

The Youthful Offender Act distinguishes between a youth who has been found guilty of a crime for which the maximum penalty is life imprisonment and a youth who has been found guilty of a crime for which the maximum penalty is less than life imprisonment. As to the latter, the legislature authorizes the court to adjudge the person a youthful offender if it determines that "the person will benefit from the disposition as a youthful offender and society will not be harmed thereby." Sec. 54.03(4)(a), Stats. 1975. As to the former, the legislature does not grant the court discretion. The legislature itself has made the determination that the person cannot be adjudged a youthful offender. Sec. 54.03(1), Stats. 1975. In effect, the legislature has itself determined that to give such persons a youthful offender disposition either would not benefit the offender or would harm society.

Hilber and Mayes challenge this disparate treatment of persons under twenty-one found guilty of crimes carrying a penalty of life imprisonment and persons under twenty-one found guilty of other crimes. They contend that the application of sec. 54.03(1), Stats. 1975, to them violated their rights under the equal protection clauses of the Fourteenth Amendment of the United

Sec. 54.17(6), Stats. 1975, was amended in 1977 to permit commingling of youthful and adult offenders until July 1, 1978. Ch. 29, sec. 659m, Laws of 1977.

[7] Sec. 54.03(4)(b), Stats. 1975, provides:

"(b) A youthful offender disposition shall not disqualify the youthful offender from entering public or private employment, or securing occupational and professional licenses. A youthful offender disposition shall not disqualify a person from voting or holding public office after discharge from probation or discharge from commitment to the department."

States Constitution and of the Wisconsin Constitution. We hold that sec. 54.03(1), Stats. 1975, is constitutional, and therefore we affirm the judgments of conviction and the orders which refused to vacate the sentences of life imprisonment.

The principles to be applied when analyzing a statute challenged on equal protection grounds are discussed at length in *State v. Hart*, 89 Wis.2d 58, 64, 277 N.W.2d 845 (1979). As we pointed out in *Hart* (at p. 65), unless a statute may be said to affect a "fundamental right" or to create a classification based on a "suspect" criterion, the standard this court uses in reviewing the constitutionality of a statutory classification is the "rational basis" test. Hilber and Mayes argue that the statutory right to youthful offender treatment is "fundamental," but their arguments are not convincing and are not supported by any authority. Indeed, differences in the treatment of criminal offenders have been viewed as being subject to the rational basis test. *Marshall v. United States*, 414 U.S. 417, 421 (1974); *McGinnis v. Royster*, 410 U.S. 263, 270, 276 (1974); *United States ex rel. McGill v. Schubin*, 475 F.2d 1257 (2d Cir. 1973). We conclude that no "fundamental right" is here affected.

The issue on appeal is thus whether there is any rational basis upon which the legislature could withhold treatment under the Youthful Offender Act from young persons found guilty of a crime for which the penalty is life imprisonment (here first-degree murder), while making treatment under the Act available to young persons found guilty of other crimes.

Hilber and Mayes assert that there is no rational basis for this legislative classification. They argue that the sole purpose of the Youthful Offender Act is to foster the rehabilitation of youthful criminals and that

young persons found guilty of crimes with the sanction of life imprisonment are no less susceptible to rehabilitation than young persons found guilty of other crimes, especially crimes of violence that are accorded lesser punishments.

We conclude that the contested legislative classification rests upon a rational basis.

The legislature articulated its intent in enacting the Youthful Offender Act, Ch. 54, Stats. 1975, as follows:

"Sec. 54.01 . . .

"(2) INTENT. The intent of this chapter is to provide a specialized correctional program for youthful offenders who are found guilty in the criminal courts. The program grows out of the increasing public concern with the disproportionately high incidence of criminality and recidivism among youthful offenders. Recognizing that these individuals are in their formative years, with an adult lifetime ahead of them, it is to the advantage of society to concentrate on specialized treatment efforts. It is the intent of this chapter to provide an alternative to procedures in the criminal code relating to conviction and sentencing. This chapter is to be liberally construed to effect its objectives."

Although the intent of chapter 54, Stats. 1975, is "to provide a specialized correctional program for youthful offenders" which will be "an alternative to procedures in the criminal code relating to conviction and sentencing," sec. 54.01 (2), Stats. 1975, it is nonetheless clear that chapter 54 was not adopted by the legislature merely for the benefit of persons under twenty-one found guilty of crimes. The Youthful Offender Act grew "out of the increasing public concern with the disproportionately high incidence of criminality and recidivism among youthful offenders," and the Act was adopted for "the advantage of society." Sec. 54.01 (2), Stats. 1975.

The paramount purpose of ch. 54, as of the criminal law in general, is to protect the members of society.[8]

Though the conviction and sentencing procedures in chapter 54 are different from those in the criminal code, chapter 54 must be understood in the context of the purposes of the criminal law generally.

Therefore rehabilitation of the offender is not, as Hilber and Mayes assert, the sole purpose of chapter 54. The legislature was careful to provide that the court may adjudge a person under twenty-one as a youthful offender only when the youth will benefit from the disposition *and* society will not be harmed thereby. Sec. 54.03(1), (4)(a), Stats. 1975. By this provision the legislature recognizes rehabilitation as an important objective but also recognizes that there are other functions of the criminal law that must be given consideration in a system of corrections dealing with youths.[9]

Hilber and Mayes do not question the legislature's power to impose a mandatory life sentence upon those persons convicted of first-degree murder or other crimes. In imposing such a severe sanction the legislature has expressed its view that such conduct stands apart from other criminal conduct in its import and effect upon society. In excluding crime subject to a mandatory penalty of life imprisonment from the scope of the Youthful Offenders Act, the legislature has once again expressed society's view of the enormity of such conduct. The leg-

---

[8] *See* Comment, *Youth Correction—The Model Act in Operation,* 17 U. Chi. L. Rev. 683, 686 (1950).

[9] The imposition of sanctions upon those who violate the criminal law is generally recognized to have five purposes: (1) to prevent the wrongdoer from committing further crimes by physically restraining him or her; (2) to deter the wrongdoer and others generally from violating the law; (3) to rehabilitate the wrongdoer; (4) to effect retribution upon the wrongdoer; (5) to provide restitution for the victim. Paulsen & Kadish, *Criminal Law and Its Processes* (Cases & Materials), Part I (1962).

islature might reasonably believe that a youth found guilty of a crime subject to mandatory life imprisonment should have the status of convicted criminal and should not be given the right to vote or hold office or the other benefits of the Youthful Offenders Act. It would be reasonable for the legislature to believe that to include a youth found guilty of a crime subject to a mandatory penalty of life imprisonment within the scope of the Act would be to depreciate the seriousness of the crime and would not serve the interest of society in deterring crime.

Perhaps the legislature might reasonably have excluded from the scope of the Youthful Offenders Act young persons found guilty of other crimes, especially those of an unusually violent or reprehensible nature. But "a classification having some reasonable basis does not offend . . . [the equal protection clause] merely because it is not made with mathematical nicety or because in practice it results in some inequality." *Morey v. Doud,* 354 U.S. 457, 463 (1957).

The defendants have not carried their burden of proving that it is arbitrary or invidious for the legislature to act on the predicate that the public safety and welfare require a person convicted of a crime punishable by life imprisonment to be excluded from the Youthful Offenders Act.

*By the Court.*—Judgments and orders affirmed.