Earl Lee PARKER and James Lee Harris, Jr., Plaintiffs-Appellants,†

v.

Donald PERCY, Secretary, Department of Health & Social Services, State of Wisconsin, and Elmer O. Cady, Administrator, Division of Corrections, Department of Health & Social Services, State of Wisconsin, Defendants-Respondents.

Court of Appeals

*No. 81-326. Submitted on briefs September 8, 1981.— Decided November 24, 1981.*
(Also reported in 314 N.W.2d 166.)

† Petition to review denied.

For the plaintiffs-appellants the cause was submitted on the brief of *Ben Kempinen* and *Legal Assistance to Institutionalized Persons Program* of Madison.

For the defendants-respondents the cause was submitted on the brief of *Bronson C. La Follette,* attorney general, and *Steven C. Underwood,* assistant attorney general.

Before Gartzke, P.J., Bablitch, J. and Dykman, J.

GARTZKE, P.J. Plaintiffs are serving life sentences for first-degree murder in the Waupun Correctional Institution. They brought this action for a declaration that secs. 53.12 and 57.06(1)(a), Stats., require that persons serving life sentences (lifers) receive industrial good time credit against their parole eligibility dates. They contend that their right to equal protection of the laws is denied if they do not receive credit for industrial good time under sec. 53.12. Finally, they urge that granting industrial good time credit to lifers is sound correctional policy. The trial court dismissed the complaint and plaintiffs appeal. We affirm.

1. *Industrial Good Time Credit Not Statutorily Mandated For Lifers*

This state distinguishes between "good time" and "industrial good time" credits against a prisoner's sentence. Section 53.11(1), Stats., the "good time" credit statute, provides in relevant part:

Each inmate who shall conduct himself in a proper manner and perform all the duties required of him shall be entitled to good time or diminution of sentence according to the following table, prorated for any part of a year: First year, one month; second year, 2 months; third year, 3 months; fourth year, 4 months; fifth year, 5 months; every year thereafter, 6 months.

Section 53.12(1), generally known as the "industrial good time" statute, provides in relevant part:

> In addition to the credit for good conduct prescribed in s. 53.11, every inmate whose diligence in labor or study surpasses the general average is entitled to a diminution of time at the rate of one day for each 6 days during which he shows such diligence. . . .

Section 57.06(1)(a), Stats., which confers discretion on the Department of Health and Social Services to grant discretionary parole, provides in relevant part:

> The department may parole an inmate of the Wisconsin state prisons . . . when he or she has served one-half of the minimum term prescribed by statute for the offense, or when he or she has served 20 years of a life term less the deduction earned for good conduct as provided in s. 53.11. . . .

In the absence of an ambiguity, we must give the words of the statute their obvious and ordinary meaning and may not resort to judicial rules of construction. *Wis. Bankers Ass'n v. Mut. Savings & Loan*, 96 Wis. 2d 438, 450, 291 N.W.2d 869, 875 (1980). A statute is ambiguous if reasonably well-informed persons can understand it in more than one sense. *Wis. Bankers Ass'n*, 96 Wis. 2d at 450, 291 N.W.2d at 875.

Reasonably well informed persons cannot understand sec. 57.06(1)(a), Stats., standing alone, to require a deduction for lifers for industrial good time. The statute refers only to the deduction for good conduct as provided in sec. 53.11, Stats., and makes no reference to industrial good time credits under sec. 53.12(1).

In support of their proposal that we ignore the plain words of sec. 57.06(1)(a), Stats., plaintiffs assert that secs. 53.12 and 57.06(1)(a) are facially inconsistent. The supposed inconsistency arises from plaintiff's read-

ing of sec. 53.12, Stats., as requiring that lifers receive credit for industrial good time, while sec. 57.06(1)(a) does not. Plaintiffs point out that sec. 53.12 provides that "every inmate" who performs satisfactory work or study is entitled to earn industrial good time credits, and lifers are inmates. They contend that failure to give credit for industrial good time under sec. 57.06(1)(a) is in substance a denial of those credits.

Having found a conflict between secs. 53.12 and 57.06(1)(a), Stats., plaintiffs contend that we should look to statutory history to resolve it. That history, in their view, indicates no intention to deny lifers credit for industrial good time.

A conflict between two statutes may create an ambiguity in one or both statutes. *State v. Kenyon,* 85 Wis. 2d 36, 49, 270 N.W.2d 160, 166 (1978); *In Matter of Estate of Walker,* 75 Wis. 2d 93, 102, 248 N.W.2d 410, 414 (1977). Although we may not use legislative history to find an ambiguity, *Evangelical Alliance Mission v. Williams Bay,* 54 Wis. 2d 187, 190, 194 N.W.2d 646, 648 (1972), that history may of course be examined to resolve an existing ambiguity. *State ex rel. Arnold v. County Court,* 51 Wis. 2d 434, 439–40, 187 N.W. 2d 354, 357 (1971). We reject, however, plaintiffs' contention that a conflict exists between secs. 53.12 and 57.06(1)(a), Stats.

Contrary to plaintiffs' contention, lifers have no right to credit against their sentences for good time or industrial good time. A life sentence has no date or maximum period from which it is possible to deduct credits for good time or industrial good time. Although sec. 57.06(1)(a), Stats., speaks of sec. 53.11, Stats., good conduct deductions for lifers, these deductions operate differently for lifers than for other inmates. They

do not advance the date by which the lifer must be paroled as a matter of right because lifers, unlike other inmates, have no date when release becomes mandatory. For a lifer, the good conduct deductions merely advance the date on which he *may* be paroled, such parole being at the discretion of the department.

Because a lifer has no right to credit against his or her sentence for industrial good time, failure to grant those credits under sec. 57.06(1)(a), Stats., deprives the lifer of nothing. That the legislature has not allowed deduction for industrial good time for discretionary parole under sec. 57.06(1)(a) therefore creates no conflict between that statute and sec. 53.12, Stats.[1]

No conflict exists between secs. 53.12 and 57.06(1)(a), Stats., for a second reason. A conflict could arise only where both statutes pertain to the same subject matter. Those statutes pertain to related but different subjects: mandatory and discretionary parole. Mandatory parole is governed by sec. 53.11(7)(a), which compels the department to parole an inmate who has served his or her term of sentence, "less good time earned under this chapter and not forfeited . . . ." The department must grant a sec. 53.11(7)(a) release. *State ex rel. Hauser v. Carbello,* 82 Wis. 2d 51, 55, 261 N.W.2d 133, 135 (1978). Lifers are not eligible for mandatory parole because it is arithmetically impossible to make the computation required by sec. 53.11(7)(a) for mandatory parole from a life sentence. Discretionary parole

[1] Plaintiffs state that the department keeps a record of good time and industrial good time credits earned by lifers. That practice is consistent with the availability to lifers of good time credits for sec. 57.06(1)(a), Stats., parole purposes and the possibility that both types of credits could be used in the event of commutation.

is governed by sec. 57.06(1)(a). It is the only kind of parole available to lifers.

Because no conflict exists between secs. 53.12 and 57.06(1)(a), Stats., we may not look beyond the plain words of sec. 57.06(1)(a), which allow a lifer a deduction only for good time earned under sec. 53.11.

2. *Equal Protection Not Denied*

Plaintiffs assert that to deny lifers credit for industrial good time under sec. 53.12, Stats., violates their rights to equal protection under art. I, sec. 1 of the Wisconsin Constitution and the fourteenth amendment to the United States Constitution.

This contention is directed solely to the implicit classification in sec. 53.12, Stats., between nonlifers and lifers. That classification results from the fact that it is arithmetically possible to deduct industrial good time credits from the maximum term of sentence for a nonlifer but not from a life sentence.

Good time or industrial good time is granted "as an incentive to conformity" and is forfeited as "the statutorily mandated way of 'controlling and punishing' institutional and parole misconduct." *State ex rel. Hauser,* 82 Wis. 2d at 78, 261 N.W.2d at 146. The activities qualifying for industrial good time are the same for lifers and nonlifers. Plaintiffs contend that in view of the common purpose of industrial good time and common qualifying activities as to lifers and nonlifers, the disparate treatment of lifers under sec. 53.12 denies them equal protection.

The principles for equal protection analysis of a statute, under this state's constitution and the fourteenth amendment to the United States Constitution, are stated in *State v. Hart,* 89 Wis. 2d 58, 64–65, 277 N.W.2d 843, 846 (1979), and *Hilber v. State,* 89 Wis. 2d 49, 54, 277

N.W.2d 839, 841–42 (1979). That analysis utilizes the "rational basis" standard, unless the statute affects a fundamental right or creates a classification based on a suspect criterion. According to *Hilber*, 89 Wis. 2d at 54, 277 N.W.2d at 842:

[D]ifferences in the treatment of criminal offenders have been viewed as being subject to the rational basis test. *Marshall v. United States*, 414 U.S. 417, 421 (1974); *McGinnis v. Royster*, 410 U.S. 263, 270, 276 (1974); *United States ex rel. McGill v. Schubin*, 475 F.2d 1257 (2d Cir. 1973).

The *Hart* court, 89 Wis. 2d at 65, 277 N.W.2d at 847, approved the following statement of the rational basis standard in *Omernik v. State*, 64 Wis. 2d 6, 18–19, 218 N.W.2d 734, 741–42 (1974) (footnotes omitted):

A legislative classification is presumed to be valid. The burden of proof is upon the challenging party to establish the invalidity of a statutory classification. Any reasonable basis for the classification will validate the statute. Equal protection of the law is denied only where the legislature has made irrational or arbitrary classification. . . . The basic test is not whether some inequality results from the classification, but whether there exists any reasonable basis to justify the classification.

Judicial response to a challenged legislative classification requires only that the reviewing court locate some reasonable basis for the classification made. The public policy involved is for the legislature, not the courts, to determine. . . .

The distinction between lifers and nonlifers under sec. 53.12, Stats., has a rational basis. That basis relates to the heinous quality of the act which resulted in a life sentence. The legislature may rationally conclude that

that quality overrides the purpose of inducing conformity in prison.[2]

Precedent exists for finding a rational basis for disparate treatment of persons sentenced to life imprisonment. The Youthful Offender's Act, ch. 54, Stats. 1975, excluded persons found guilty of crimes for which the maximum penalty was life imprisonment.[3] In rejecting an equal protection challenge to the exclusion, the supreme court said in *Hilber*, 89 Wis. 2d at 56–57, 277 N.W.2d at 843:

> In imposing such a severe sanction [of mandatory life sentence] the legislature has expressed its view that such conduct stands apart from other criminal conduct in its import and effect upon society. In excluding crime subject to a mandatory penalty of life imprisonment from the scope of the Youthful Offenders Act, the legislature has once again expressed society's view of the enormity of such conduct. . . . It would be reasonable for the legislature to believe that to include a youth found guilty of a crime subject to a mandatory penalty of life imprisonment within the scope of the Act would be to depreciate the seriousness of the crime and would not serve the interest of society in deterring crime.

The same considerations apply here. It would be equally reasonable for the legislature to conclude that to permit a person sentenced to life imprisonment to earn industrial good time credits under sec. 53.12, Stats., would be to depreciate the seriousness of the crime and not deter crime.

---

[2] A substantial inducement for conformity is already held out to lifers by the credit for sec. 53.11, Stats., good time for discretionary parole purposes under sec. 57.06(1)(a), Stats. The deduction for statutory good time makes a lifer eligible for discretionary parole in eleven years and three months.

[3] Chapter 54, Stats. 1975, was repealed by sec. 377, ch. 418, Laws of 1977.

Plaintiffs have not shown that persons sentenced to life imprisonment are denied equal protection of the laws by exclusion from the industrial good time provisions of sec. 53.12, Stats.

3. *Correctional Policy*

Plaintiffs urge that lifers should be given industrial good time credits in the interests of good correctional policy. The argument has no merit for judicial review. The legislature rather than the judiciary is responsible for correctional policy.

*By the Court.*—Judgment affirmed.