Frank GUERTIN, Plaintiff-Appellant-Petitioner,

v.

HARBOUR ASSURANCE COMPANY OF
BERMUDA, LTD., International Harvester
Company, Royal Insurance Company of
America, Ryder Truck Rental, Inc., Edward
Krissman, ABC Insurance Company and XYZ
Corporation, Defendants-Respondents.

Supreme Court

*No. 85–2316. Argued October 6, 1987.—Decided December 3,
1987.*

(Also reported in 415 N.W.2d 831.)

For the plaintiff-appellant-petitioner there were briefs by *Dean M. Horwitz, Hope K. Olson* and *Previant, Goldberg, Uelmen, Gratz, Miller & Brueggeman, S.C.,* Milwaukee and oral argument by *Dean M. Horwitz.*

For the defendants-respondents there were briefs by *Frank J. Daily, Michael J. Gonring* and *Quarles & Brady,* Milwaukee, and *Douglas J. Carroll, Arnold, Murray, O'Neill & Schimmel,* Milwaukee, and oral argument by *Frank J. Daily.*

DAY, J. This is a review of a decision of the court of appeals, *Guertin v. Harbour Assurance Co. of Bermuda,* 135 Wis. 2d 334, 400 N.W.2d 56 (Ct. App. 1986), which affirmed a summary judgment granted by the circuit court for Milwaukee county, Judge Ralph Adam Fine presiding. The summary judgment dismissed the complaint of the plaintiff, Frank G. Guertin (Guertin), a Wisconsin resident, for personal injuries he sustained in Illinois. We conclude, as did the court of appeals, that the circuit court properly applied Wisconsin's "borrowing statute," sec. 893.07(1), Stats.,[1] barring Guertin's tort action because

---

[1] Wisconsin's so-called "borrowing statute," sec. 893.07, Stats., adopts the limitations rule of another state under certain circumstances and applies it as if it were Wisconsin's own statute:

**Application of foreign statutes of limitation.** (1)  If an action is brought in this state on a foreign cause of action and the foreign

the statutory limitation period adopted by that statute had expired.

The facts of this case are not in dispute. On February 15, 1982, Guertin, a truck driver, was injured in the state of Illinois when he slipped and fell off a fuel tank of a semi-tractor he was employed to drive. He commenced an action in Milwaukee county circuit court on October 22, 1984, alleging negligence and strict liability in tort. Named as defendants were International Harvester Company, which did business in Wisconsin and was the designer and manufacturer of the semi-tractor, Ryder Truck Rental, Inc., which sold or leased the semi-tractor to Guertin's employer and also did business in Wisconsin, Royal Insurance Company of America, which was Ryder's liability insurer, and JWI Trucking, Inc., the Wisconsin corporation which employed Guertin. On February 14, 1985, an amended summons and complaint were filed, adding Edward Krissman, a mechanic employed by Ryder who maintained and serviced the semi-tractor in Wisconsin, and Harbour Assurance Company of Bermuda, International Harvester's excess liability insurance carrier, as additional defendants.

International Harvester, joined by Ryder Truck Rental and Mr. Krissman, moved to dismiss Guertin's complaint claiming that his cause of action was barred under Wisconsin's borrowing statute, sec. 893.07, Stats., by an Illinois two-year statute of limitations.[2]

period of limitation which applies has expired, no action may be maintained in this state.

(2)   If an action is brought in this state on a foreign cause of action and the foreign period of limitation which applies to that action has not expired, but the applicable Wisconsin period of limitation has expired, no action may be maintained in this state.

[2]The Illinois statute of limitations in effect at the time of this action was Ill. Rev. Stat. ch. 110, para. 13–202 (1983), which reads:

They argued this statute was applicable because Guertin's claim for personal injuries sustained in Illinois was a "foreign cause of action," and under this statute, the shorter two-year Illinois statute would be applied rather than Wisconsin's three-year personal injury statute of limitations, sec. 893.54, Stats.[3] Harbour Assurance moved to dismiss on the grounds of misjoinder and lack of personal jurisdiction.

The circuit court granted International Harvester's motion and denied Guertin's motion for reconsideration, finding that the action was barred by the statute of limitations imposed under sec. 893.07, Stats. The court declined to rule on Harbour Assurance's motion. Judgment was entered dismissing the action with prejudice as to all parties. Guertin appealed and the court of appeals affirmed the judgment of the circuit court. Guertin then petitioned this court for review.

The first question is whether Guertin's tort claims constitute a "foreign cause of action" within the meaning of Wisconsin's borrowing statute, sec. 893.07, Stats. Guertin alleges that the circuit court improperly interpreted the borrowing statute to preclude his action when it concluded that a "foreign cause of action" existed merely because he was injured outside the state of Wisconsin. He contends a grouping or assessment of significant contacts underlying his

---

**Personal injury—Penalty.** Actions for damages for an injury to the person, . . . shall be commenced within 2 years next after the cause of action accrued . . . .

[3]Section 893.54, Stats., provides, in pertinent part:

**Injury to the person.** The following actions shall be commenced within 3 years or be barred:
    (1)   An action to recover damages for injuries to the person.

action should have been made, and that under such a test his claims would not amount to a "foreign cause of action," but one most significantly related to Wisconsin. Therefore, he argues, Wisconsin's statute of limitations should apply. He further argues that the place of injury is mere happenstance and should not be the determinative factor in making this assessment because it would amount to a return to the "mechanical" doctrine of *lex loci delicti,* which this court specifically abandoned in *Wilcox v. Wilcox,* 26 Wis. 2d 617, 133 N.W.2d 408 (1965).

Respondents counter that the place of injury is the place a cause of action in tort arises. They assert that the plain meaning and legislative intent of sec. 893.07, Stats., adequately define "foreign cause of action" to mean an action for any injury to a person which arises outside this state. For any such injury occurring outside Wisconsin, the borrowing statute directs that the shorter limitation period, either Wisconsin's or the state where the injury arose, be adopted. As a result, they claim that the circuit court properly applied the Illinois limitation period adopted by Wisconsin's borrowing statute for Guertin's injury which occurred in Illinois, and correctly determined that Guertin was not eligible to bring his action here because it was untimely filed.

Resolving this issue requires an interpretation of the language of the borrowing statute, sec. 893.07, Stats., which this court has not previously analyzed. The construction of a statute or the application of a statute to a particular set of facts is a question of law which appellate courts may review without deference to lower courts' reasoning. *Bucyrus-Erie Co. v. State Indus. Labor & Human Relations Dept.,* 90 Wis. 2d

627

408, 417, 280 N.W.2d 142, 146–47 (1979); *State v. Wittrock*, 119 Wis. 2d 664, 669, 350 N.W.2d 647, 650 (1984).

> "The purpose of statutory interpretation is to ascertain and give effect to the legislature's intent. In determining legislative intent, first resort is to the language of the statute itself. If the meaning of the statute is clear on its face, this court will not look outside the statute in applying it. If the statutory language is ambiguous, this court attempts to ascertain the legislature's intent by the scope, history, context, subject matter and object of the statute. A statute is ambiguous if it is capable of being understood by reasonably well-informed persons in either two or more senses." *In Interest of P.A.K.,* 119 Wis. 2d 871, 878–79, 350 N.W.2d 677, 681–82 (1984)(Citations omitted.)

The phrase, "foreign cause of action," was not used by the legislature prior to the enactment of sec. 893.07, Stats., and is not expressly defined in that statute. We find this phrase may reasonably convey two different meanings. A "foreign cause of action" might be one which exists because of significant contacts with another jurisdiction. It may also describe any action where injury arises outside the forum state. We, therefore, turn to extrinsic sources to determine what the legislature meant by the phrase.

In 1979, the legislature restructured Chapter 893, *Limitations of Commencement of Actions and Proceedings and Procedure for Claims Against Governmental Units.* Within that comprehensive revision, the Judicial Council redrafted Wisconsin's borrowing statute, sec. 893.205, Stats., renumbering it to sec. 893.07. The "written comments of legislatively created advisory committees are relevant in construing statutes and

ascertaining the legislative intent of statutes recommended by such committees." *Champlin v. State,* 84 Wis. 2d 621, 625, 267 N.W.2d 295, 297 (1978). The Judicial Council Committee's Note to the newly-enacted sec. 893.07 stated:

"Sub. (1) applies the provision of s. 893.05 that the running of a statute of limitations extinguishes the right as well as the remedy to a foreign cause of action on which an action is attempted to be brought in Wisconsin in a situation where the foreign period has expired. *Sub. (1) changes the law of prior s. 893.205(1), which provided that a resident of Wisconsin could sue in this state on a foreign cause of action to recover damages for injury to the person even if the foreign period of limitation had expired.*

"Sub. (2) applies the Wisconsin statute of limitations to a foreign cause of action if the Wisconsin period is shorter than the foreign period and the Wisconsin period has run." (Emphasis added.)

Former sec. 893.205(1) did not use the phrase "foreign cause of action." Rather, it stated, in pertinent part:

"But no action to recover damages *for injuries to the person, received without this state,* shall be brought in any court in this state when such action is barred by any statute of limitations of actions of the state or country in which such injury was received unless the person so injured shall, at the time of such injury, have been a resident of this state." (Emphasis added.)

The Committee's Note for Chapter 893 further provides, "The previous provisions of ch. 893 are found in the recreated chapter in the same form that they previously existed or are *redrafted only for greater*

*clarity and ease of application except as otherwise noted.*" (Emphasis added.) It is apparent from the Committee's comments that the Council considered the phrase "foreign cause of action" to be synonymous with the language of the former borrowing statute, sec. 893.205(1), Stats. (1977), which barred actions "for injuries to the person, received without this state."

The Seventh Circuit Court of Appeals, applying Wisconsin law to resolve the interpretation of the phrase "foreign cause of action," concluded in *Johnson v. Deltadynamics, Inc.,* 813 F.2d 944, 945 (7th Cir. 1987), that the Judicial Council Committee's Note, using the phrase "foreign cause of action" in place of former language regarding injuries "received without this state," was entitled to "particularly heavy weight." The court held that in a tort action the place of injury determined where the cause of action arose, and therefore, which statute of limitations ought to be applied under Wisconsin's borrowing statute. In reaching this conclusion, the court said:

> "Indeed, the statute would add little or nothing to the common law of Wisconsin if by the use of the expression 'foreign cause of action' the legislators meant to require the courts to go through their usual conflict of laws analysis in deciding whether the foreign period of limitations is a bar." *Id.* at 946.

We agree.

Guertin's analysis confuses two separate conflicts issues. One type of conflicts assessment is the selection of law to resolve substantive issues of an action that is timely before a Wisconsin court. Once a claim is properly before the court under sec. 893.07, Stats., and an outcome-determining conflict exists between laws

of two or more interested jurisdictions, then the analysis of significant contacts Guertin advocates is made using the five choice-influencing considerations of predictability of results, maintenance interstate and international order, simplification of the judicial task, advancement of the forum's governmental interests, and application of the better rule of law, which this court adopted in *Heath v. Zellmer,* 35 Wis. 2d 578, 596, 151 N.W.2d 664, 672 (1967).

The present action illustrates an initial conflict of law determination as to the timeliness of the action. This matter is resolved by a statutory provision which adopts as Wisconsin law either the law of the state where the cause of action arose or Wisconsin's law, whichever is shorter.

The fact that the law of the state where the injury occurred is adopted by Wisconsin's borrowing statute under the circumstances of this case does not amount to a return to *lex loci delicti.* Quite the contrary, had Guertin been injured in a state with a longer limitation period than Wisconsin, Wisconsin's shorter statutory period would have been applied under sec. 893.07, Stats. Wisconsin's borrowing statute uses the place of injury only to determine which jurisdictions are to be compared in establishing the shorter limitation period.

The manifest intent of the legislature in enacting this borrowing statute was to adopt the shortest possible limitation period for actions litigated in this state potentially subject to more than one statute of limitations. The policies advanced by such a statute include the reduction of forum shopping, the prevention of stale claims, the expedient litigation of controverted matters, and the avoidance of uncertainty in

assessing the timeliness of bringing an action in this state without the necessity of a court hearing to make such a determination, thereby preserving scarce judicial resources. While it is this court's duty to see that the public policy adopted by the legislature prevails, *Hengel v. Hengel,* 122 Wis. 2d 737, 742, 365 N.W.2d 16, 18–19 (Ct. App. 1985), we note that this policy matter might have been resolved in other ways. *See, e.g.,* Leflar, *The New Conflicts—Limitations Act,* 35 Mercer L. Rev. 461 (1984) (detailed analysis of the revised Uniform Conflicts of Law—Limitations Act, 12 U.L.A. 51 (1985 supp.), which provides that if a claim is substantively based upon the law of one other state, the limitations period of that state applies, and if it is based on more than one state, the conflicts law of the forum applies to select the applicable statute of limitations, except a separate "escape clause" would allow a court to apply the forum's limitation period if the law chosen operates unfairly against either party); Comment, *Wisconsin's Borrowing Statute: Did We Shortchange Ourselves?,* 70 Marq. L. Rev. 120 (1986) (suggests the legislature redefine "foreign cause of action" and that an exception be created exempting resident plaintiffs and defendants from the operation of the borrowing statute). To apply choice-influencing considerations to the issue of timeliness of an action resolved by sec. 893.07, Stats., as it is currently drafted, however, would defeat the express provisions and policies served by this statute. We conclude, therefore, that the trial court properly applied sec. 893.07, to bar this action.

The next issue Guertin raises is that Wisconsin's borrowing statute unreasonably discriminates against resident plaintiffs who are involved in out-of-state accidents contrary to the provisions of art. I, sec. 1 of

the Wisconsin Constitution and the 14th amendment of the United States Constitution.[4] The effect of the borrowing statute, he claims, is to treat those residents as a separate class, denying them the benefit of Wisconsin limitation statutes which residents injured within the state would receive, thereby curtailing access to Wisconsin courts without a rational basis for this distinction.

The constitutionality of a statute is a question of law which this court reviews de novo, without deference to lower courts' decisions. *Bachowski v. Salamone*, 139 Wis. 2d 397, 404, 407 N.W.2d 533, 536 (1987). There is a strong presumption of constitutionality of statutes and a statute will be sustained if there is any reasonable basis upon which the legislation may reasonably rest. *Treiber v. Knoll*, 135 Wis. 2d 58, 64–65, 398 N.W.2d 756 (1987).

---

[4]The text of section 1 of the 14th amendment of the United States Constitution states:

"All persons born or naturalized in the United States, and subject to the jurisdiction thereof, are citizens of the United States and of the State wherein they reside. No State shall make or enforce any law which shall abridge the privileges or immunities of citizens of the United States; nor shall any State deprive any person of life, liberty, or property without due process of law; *nor deny to any person within its jurisdiction the equal protection of the laws.*" (Emphasis added.)

Article I, section 1 of the Wisconsin Constitution reads:

*"Equality; inherent rights.* All people are born equally free and independent, and have certain inherent rights; among these are life, liberty and the pursuit of happiness; to secure these rights, governments are instituted, deriving their just powers from the consent of the governed."

In alleging that a statute is violative of the equal protection clause, a party must prove abuse of legislative discretion beyond a reasonable doubt. *Stanhope v. Brown County,* 90 Wis. 2d 823, 837, 280 N.W.2d 711, 716 (1979). Guertin makes no claim that the borrowing statute involves a "fundamental right," we therefore examine this statute by applying the "rational basis" test. *Hilber v. State,* 89 Wis. 2d 49, 54, 277 N.W.2d 839, 841–42 (1979) (it is sufficient to establish constitutionality of a statute challenged on equal protection grounds, where no "fundamental right" is impinged, if a "rational basis" for the legislation exists). Using this test, "[e]qual protection of the law is denied only where the legislature has made irrational or arbitrary classification. ... The basic test is not whether some inequality results from the classification, but whether there exists any reasonable basis to justify the classification." *Omernik v. State,* 64 Wis. 2d 6, 18–19, 218 N.W.2d 734, 742 (1974).

We find the classes alleged by Guertin are not truly reflective of the borrowing statute's provisions. The only distinction made by this statute is between persons, regardless of residence, who are injured inside and outside of the state of Wisconsin. We conclude, however, that this legislative classification rests on a rational basis. Those injured within the state are subject only to Wisconsin's statutes of limitation, whereas those injured outside of the state may be subject to more than one state's limitation statutes. Wisconsin's borrowing statute obviates uncertainty where more than one statute of limitation might apply, protecting all parties by the creation of a

bright line rule which allows predictability in an area previously fraught with confusion.

Guertin further claims that applying this statute would bar him from bringing an action against a defendant, such as Krissman, who is a Wisconsin resident and has no contacts outside the state. This is inaccurate. Wisconsin's borrowing statute only bars untimely filed actions. The action against Krissman, presuming he truly had no other jurisdictional contacts elsewhere, could have been brought in Wisconsin within two years after Guertin's accident. Were this argument a valid basis for finding sec. 893.07, Stats., unconstitutional, then virtually no statute of limitations could ever be upheld since each would at some point deny a party the ability to bring an action.

We conclude that a rational basis exists for the distinction made under Wisconsin's borrowing statute concerning persons who are injured outside of this state. We hold, therefore, that Guertin was not denied equal protection by application of the borrowing statute.

As a final issue, Guertin claims that the circuit court had personal jurisdiction over Harbour Assurance, which he named as a defendant in his amended complaint. Harbour Assurance denied that the court had jurisdiction over it. We do not reach this issue, because we have found that Guertin's action was barred as a matter of law.

*By the Court.*—The decision of the court of appeals is affirmed.