**Jane DOE, individually and as Administratrix of the Estate of John Doe, Plaintiff,**

**v.**

**The AMERICAN NATIONAL RED CROSS, a corporation, Defendant.**

**No. 91–C–0897–C.**

United States District Court, W.D. Wisconsin.

March 30, 1994.

Joseph D. Becker, Sauer, Becker, Flanagan & Lynch, La Crosse, WI, for John and Jane Doe, and State of Wis. Health Benefit Plan.

Donald K. Schott, Quarles & Brady, Madison, WI, for the American Nat. Red Cross.

## OPINION AND ORDER

CRABB, Chief Judge.

This is a civil action in which plaintiff is suing for actual and punitive damages resulting allegedly from defendant's negligence in the screening of donors and donated blood. Plaintiff alleges that her husband contracted the Human Immunodeficiency Virus on December 27, 1983, after receiving a post-surgical transfusion of donated blood supplied by defendant. Diversity jurisdiction is present. 28 U.S.C. § 1332.

In an earlier order, I determined that the Supreme Court of Wisconsin would find defendant a health care provider, against whom a suit must be brought within three years of the date of injury or within one year of the date of discovery of the injury. I dismissed the suit on defendant's motion for summary judgment because the time for filing a suit against a health care provider had expired before plaintiff brought this action. 796 F.Supp. 395. On appeal, the Court of Appeals for the Seventh Circuit certified the question of the characterization of defendant to the Supreme Court of Wisconsin, 976 F.2d 372, which found that defendant was not a health care provider under Wisconsin law. 176 Wis.2d 610, 500 N.W.2d 264. On November 22, 1993, the court of appeals reversed the grant of summary judgment and remanded the case to this court for further proceedings. 9 F.3d 1293. The case is before the court on defendant's motions 1) for judgment on the pleadings with respect to plaintiff's demand for punitive damages; 2) to strike plaintiff's demand for trial by jury; and 3) for summary judgment on the ground that the case is barred by the applicable statute of limitations.

Defendant contends that although it is a federal instrumentality, authorized by Congress to sue and be sued, it has sovereign immunity from both punitive damages and trial by jury. I conclude that defendant misconstrues the scope of the waiver of its immunity and that it has failed to show either that having to try this case to a jury would be a "grave interference" with the performance of its governmental functions or that Congress intended to narrow the waiver of defendant's immunity. However, I conclude that subjecting defendant to an award of punitive damages would interfere unduly with defendant's ability to carry out its governmental functions. Also, I conclude that defendant is not entitled to summary judgment on its claim that the applicable statute of limitations has run. Plaintiff's suit was filed timely under Wisconsin law, which supplies the applicable statute of limitations.

### *Motions to Strike and for Judgment on the Pleadings*

I begin with the undisputed proposition that defendant is an instrumentality of the United States. "[B]oth the President and the Congress have recognized and acted in reliance upon the Red Cross' status virtually as an arm of the Government." *Department of Employment v. United States,* 385 U.S. 355, 359–60, 87 S.Ct. 464, 467, 17 L.Ed.2d 414 (1966). The corporation is chartered by the United States, 36 U.S.C. § 1; its head and seven of its governors are chosen by the President of the United States, 36 U.S.C. § 5; its budget is audited by the Department of Defense, 36 U.S.C. §§ 6 and 7; it occupies a building built for it and owned by the United States, 36 U.S.C. § 13; and it enjoys immunity from state and city taxes, *Department of Employment,* 385 U.S. 355, 87 S.Ct. 464, 17 L.Ed.2d 414; *United States v. Spokane,* 918 F.2d 84 (9th Cir.1990). Defendant was given the authority "to sue and be sued in courts of law and equity within the jurisdiction of the United States" in 1905. Act of Jan. 5, 1905, ch. 23, § 2, 33 Stat. 600. *See American National Red Cross v. S.G.,* — U.S. —, —, 112 S.Ct. 2465, 2468, 120 L.Ed.2d 201 (1992).

The parties agree that the enactment of the sue and be sued clause waived defendant's sovereign immunity. They disagree solely as to the extent of the waiver. Plaintiff contends that the waiver was complete; defendant contends that the waiver operates only to waive defendant's immunity from the "natural and appropriate incidents of legal proceedings," *Loeffler v. Frank,* 486 U.S. 549, 555, 108 S.Ct. 1965, 1969, 100 L.Ed.2d 549 (1988), which do not include the right to a jury trial or an award of punitive damages.

According to defendant, the natural and appropriate incidents of legal proceedings "include only those things necessary to commence and maintain a legal proceeding to permit full compensation." *Barton v. American Red Cross,* 826 F.Supp. 412, 414–15 (M.D.Ala.1993).

Defendant relies on *Lehman v. Nakshian,* 453 U.S. 156, 168, 101 S.Ct. 2698, 2705, 69 L.Ed.2d 548 (1981), for the proposition that whenever Congress waives sovereign immunity from suit, the United States and its instrumentalities remain immune from other aspects of civil proceedings, such as jury trials and punitive damages, unless Congress waives this special immunity "affirmatively and unambiguously." But *Lehman* did not hold that waiver through a sue and be sued clause is the same kind of waiver as the United States has effected for itself and its agencies in specific instances, such as in the Federal Tort Claims Act, the extension to federal employees of the remedies of Title VII or the Age Discrimination in Employment Act. In *Lehman,* the Supreme Court held that plaintiffs did not have the right to a jury trial in age discrimination suits brought against the Department of the Navy. The Court found it determinative that Congress had made no explicit provision for jury trial in the age discrimination legislation; if Congress waives the government's immunity from suit, the plaintiffs have a right to a jury trial "only where that right is one of 'the terms of [the Government's] consent to be sued.'" *Id.* (quoting *United States v. Testan,* 424 U.S. 392, 399, 96 S.Ct. 948, 953, 47 L.Ed.2d 114 (1976)). The Court added that when Congress waives the sovereign immunity of the United States, "it has almost always conditioned that waiver upon a plaintiff's relinquishing any claim to a jury trial." *Id.* at 161, 101 S.Ct. at 2702.

By contrast, the Court has described the waiver of sovereign immunity effected by a sue and be sued clause as a waiver that

> "should be liberally construed.... [I]f the general authority to 'sue and be sued' is to be delimited by implied exceptions, it must be clearly shown that certain types of suits are not consistent with the statutory or constitutional scheme, that an implied restriction of the general authority is necessary to avoid grave interference with the performance of the governmental function, or that for other reasons it was plainly the purpose of Congress to use the 'sue and be sued' clause in a narrow sense."

*Loeffler v. Frank,* 486 U.S. 549, 554, 108 S.Ct. 1965, 1969, 100 L.Ed.2d 549 (1988) (quoting *Federal Housing Admin. v. Burr,* 309 U.S. 242, 245, 60 S.Ct. 488, 490, 84 L.Ed. 724 (1940)). In a series of decisions, the Court has held that federal instrumentalities similar to the Red Cross with authority to sue and be sued are subject to such incidents of suit as prejudgment interest, *Loeffler v. Frank,* 486 U.S. 549, 108 S.Ct. 1965; are required to honor garnishment orders issued by state courts, *FHA v. Burr,* 309 U.S. 242, 60 S.Ct. 488; are required to withhold delinquent state taxes from their employees' salaries and are subject to state administrative proceedings, *Franchise Tax Board of California v. USPS,* 467 U.S. 512, 104 S.Ct. 2549; are subject to suits in tort, *Keifer & Keifer v. Reconstruction Finance Corp.,* 306 U.S. 381, 59 S.Ct. 516, 83 L.Ed. 784 (1939); are responsible for court costs in the same manner as any private litigant, *Reconstruction Finance Corp. v. J.G. Menihan Corp.,* 312 U.S. 81, 61 S.Ct. 485, 85 L.Ed. 595 (1941), and are not immune from claims of equitable estoppel, *Portmann v. United States,* 674 F.2d 1155, 1167–69 (7th Cir.1982).

The federal courts have considered the specific question of the availability of jury trials in suits against federal instrumentalities in only a handful of published decisions. The results are mixed. In various actions against the Tennessee Valley Authority, one court has held that a right to jury trial exists in a suit over a contract dispute in the absence of any showing that Congress intended to deny the complaining party this right, *Algernon Blair Industrial Contractors, Inc. v. TVA,* 552 F.Supp. 972, 973–74 (M.D.Ala. 1982), while another district court has held to the contrary. *Jones–Hailey v. Corporation of TVA,* 660 F.Supp. 551, 553 (E.D.Tenn. 1987). In a suit against the United States Postal Service, the Court of Appeals for the Second Circuit denied a motion for a writ of mandamus brought by the plaintiff to require

the district court to grant her request for a jury in her wrongful discharge suit against the postal service for reinstatement and back pay. *In re Young,* 869 F.2d 158 (2d Cir. 1989) (per curiam). The district court had held that a jury trial was not available in suits against the postal service in the absence of a showing that the Postal Reorganization Act, Act of Aug. 12, 1970, Pub.L. No. 91–375, 84 Stat. 719, *codified at* 39 U.S.C. § 101, had conferred such a right "clearly and unequivocally." *Young v. United States Postal Service,* 698 F.Supp. 1139, 1143 (S.D.N.Y.1988) (quoting *Griffin v. United States Postal Service,* 635 F.Supp. 190 (N.D.Ga.1986)). (The court did not discuss whether plaintiff's demand for purely equitable relief would have entitled her to a jury in any event.) In a suit against the Federal Land Bank Association, the Court of Appeals for the Seventh Circuit reached a conclusion contrary to that of the Second Circuit, holding that because the Federal Land Bank Association of Southern Illinois and the Central Production Credit Association were federal instrumentalities rather than federal agencies, jury trials were available as a matter of right to employees bringing age discrimination claims against these entities. *Hanna v. Federal Land Bank Ass'n of Southern Illinois,* 903 F.2d 1159, 1162 (7th Cir.1990). And in suits against the Red Cross, three courts have held in published opinions that the right to jury trial does not exist; one court has held that plaintiffs have the right both to jury trial and to punitive damages. *See Berman v. American Red Cross,* 834 F.Supp. 286 (N.D.Ind.1993) (no right to jury trial); *Barton v. American Red Cross,* 826 F.Supp. 412 (M.D.Ala.1993) (same); *Barton v. American Red Cross,* 826 F.Supp. 407 (M.D.Ala.1993) (no right to seek punitive damages); *Johnson v. Hospital of the Medical College of Penn.,* 826 F.Supp. 942 (E.D.Pa.1993) (no right to jury trial); *Doe v. American Red Cross,* 845 F.Supp. 1152, (S.D.W.Va.1994) (plaintiffs suing Red Cross have right to jury trial and to punitive damages).

Even without the guiding precedent in this circuit in *Hanna,* 903 F.2d 1159, I would conclude that persons suing the Red Cross for negligence have a right to a jury trial. The courts that have held to the contrary have relied on *Lehman,* 453 U.S. 156, 101 S.Ct. 2698, which holds that Congress must "affirmatively and unambiguously" grant the right to trial by jury for this right to apply to actions against the federal government, *id.* at 168, 101 S.Ct. 2698. But, as noted previously, *Lehman* was a suit against the federal government itself, rather than a suit against a federal instrumentality. The presumption runs the opposite way in suits against federal instrumentalities: "agencies 'authorized to "sue and be sued" are presumed to have fully waived immunity.'" *Federal Deposit Insurance Corp. v. Meyer,* — U.S. —, 114 S.Ct. 996, 127 L.Ed.2d 308 (1994) (quoting *International Primate Protection League v. Administrators of Tulane Ed. Fund,* 500 U.S. 72, 86 n. 8, 111 S.Ct. 1700, 1709 n. 8, 114 L.Ed.2d 134 (1991)). In such suits, the burden is on the instrumentality to show one of three reasons why the right to trial by jury should not exist: a trial by jury would be inconsistent with the statutory scheme; such a trial would interfere gravely with the performance of a government function; or Congress intended to use the sue and be sued clause in a narrow sense in the particular instance before the court. *FHA v. Burr,* 309 U.S. at 245, 60 S.Ct. at 490. In arguing that the court must determine whether Congress has made an affirmative and unambiguous statement waiving trial by jury, defendant is confusing two separate strands of analysis. The correct question in this case is whether the instrumentality (defendant) has shown a special reason why the waiver of immunity should not extend to trial by jury or to the right to seek an award of punitive damages.

Defendant has not shown any reason to suggest that Congress intended the sue and be sued clause applicable to defendant to be read narrowly. It has not shown that trial by jury would undermine the statutory scheme establishing defendant as a federal instrumentality or interfere gravely with the performance of its governmental functions. It rests its claim primarily on the holding in *Lehman* that the federal government does not readily waive its immunity to trial by jury. Defendant makes the additional argument that the words "sue and be sued" normally include the natural and appropriate

incidents of legal proceedings, *see RFC v. J.G. Menihan Corp.*, 312 U.S. at 85, 61 S.Ct. at 487, and argues that "the natural and appropriate incidents of legal proceedings" include only those things necessary to commence and maintain a legal proceeding to permit full compensation and do not include a jury. The district court adopted this argument in *Barton,* 826 F.Supp. at 415, holding that a jury trial was not necessary to achieve full compensation in a legal proceeding. With due respect, I cannot agree that the phrase, "the natural and appropriate incidents of legal proceedings," can be parsed as narrowly as it was in *Barton.* The "natural," indeed fundamental, incident of a legal proceeding is a jury trial. It is hard to imagine that the Supreme Court would hold that federal instrumentalities are subject to state administrative proceedings, *Franchise Tax Board,* 467 U.S. 512, 104 S.Ct. 2549, and to such aspects of litigation such as prejudgment interest, *Loeffler,* 486 U.S. 549, 108 S.Ct. 1965, and fees and costs, *J.G. Menihan Corp.,* 312 U.S. 81, 61 S.Ct. 485, but are immune from the constitutionally prescribed, fundamental right to a jury trial.

Defendant's immunity from state and local taxes does not affect the conclusion that defendant is subject to jury trials. The two concepts are analytically distinct. *Cf. Federal Land Bank v. Board of County Comm'rs,* 368 U.S. 146, 82 S.Ct. 282, 7 L.Ed.2d 199 (1961) (federal land banks are immune from state and local taxes for activities performed within the authority granted to the instrumentality), and *Federal Land Bank v. Priddy,* 295 U.S. 229, 55 S.Ct. 705, 79 L.Ed. 1408 (1935) (federal land banks are subject to attachment; express waiver of immunity from suit through sue and be sued clause subjects land bank to usual incidents of suits against natural persons, including liability to process of attachment). "Immunity of corporate government agencies from suit and judicial process, and their incidents, is less readily implied than immunity from taxation." *Priddy,* 295 U.S. at 235, 55 S.Ct. at 708. Congress has not waived defendant's immunity from taxation as it has waived its immunity from the normal incidents of suit.

■ Whether defendant is immune from punitive damages is a separate and more difficult question. Defendant contends that it is immune, pointing out that every court to have considered whether to assess punitive damages against federal instrumentalities has declined to do so. With the exception of the decision in *Doe v. American Red Cross,* 845 F.Supp. 1152, issued after briefing was complete, defendant is correct. However, the cases cited are of dubious validity. They examine the question of the availability of punitive damages in suits against *federal instrumentalities* as if they were considering the question in suits against the *federal government.* Instead of asking whether an exception exists to the presumptive waiver of all immunity, the courts in the cited cases ask whether punitive damages have been provided for clearly and unambiguously. *See e.g., Commerce Fed. Sav. Bank v. Federal Deposit Ins. Corp.,* 872 F.2d 1240, 1248 (6th Cir.1989); *Smith v. Russellville Prod. Credit Ass'n,* 777 F.2d 1544, 1550 (11th Cir.1985); *Rohweder v. Aberdeen Production Credit Ass'n,* 765 F.2d 109, 113 (8th Cir.1985). In only one of the cited cases does the court even allude to the question whether an award of punitive damages would interfere with the performance of the instrumentality's government functions. In *Smith,* 777 F.2d at 1544, the court notes that "although punitive damages awards against PCAs would not be paid out of the federal treasury, such awards would interfere with public administration," because they would have to be paid with money that could otherwise be used for financing tractor equipment purchases or land expansion and would undercut the government's purposes in establishing the PCAs. *Id.* at 1550.

The present record is largely devoid of evidence about defendant's financial arrangements. Plaintiff makes a number of assertions about the separateness of defendant's blood banking activities, but they are unsupported by any evidence. Even so, plaintiff does not go so far as to suggest that a judgment against defendant would not affect its non-blood banking activities, however separate they may be for other purposes. Thus, even if I adopted plaintiff's view of defendant as exercising some governmental functions

(furnishing volunteer aid to the armed forces in wartime, acting as a medium of communication between the people of the United States and the armed forces, and carrying on a system of national and international relief in time of peace) and some non-governmental functions (collection and distribution of blood), I could not say that an award of punitive damages would affect only defendant's blood banking functions.

There is a significant risk that subjecting defendant to damages large enough to punish or deter it would interfere gravely with defendant's performance of the governmental functions for which it was chartered. In considering whether punitive damages should be recoverable against municipalities, the Supreme Court stated that "[t]he impact of [a punitive damage award] is likely to be both unpredictable and at times, substantial, and we are sensitive to the possible strain on local treasuries and therefore on services available to the public at large." *Newport v. Fact Concerts, Inc.,* 453 U.S. 247, 271–72, 101 S.Ct. 2748, 2761–62, 69 L.Ed.2d 616 (1981). Punitive damages awards have the possibility of placing a similar strain on defendant's financial resources and on its ability to carry out the services it performs on behalf of the government in wartime and in disaster relief. I conclude therefore that punitive damages are unavailable in this action.

*Motion for Summary Judgment*

For the purpose of deciding this motion, I find as undisputed the material facts set forth below, which are drawn from the facts that I found to be undisputed in the opinion and order entered herein on June 18, 1992. *See Doe v. American Red Cross,* 796 F.Supp. 395 (W.D.Wis.1992).

## UNDISPUTED FACTS

Plaintiff's husband, John Doe, was hospitalized at St. Joseph's Hospital in Arcadia, Wisconsin, on December 26–28, 1983, for treatment of gastrointestinal bleeding. On December 27, 1983, he received a transfusion of two units of packed blood cells. On December 28, he received a second transfusion, also of two units of packed blood cells. All of the blood had been collected by defendant's St. Paul Regional Blood Services on December 8, 1983.

On or about August 22, 1988, the St. Paul Chapter learned from the Minnesota Department of Health that the donor of one of the units had tested positive for Human Immunodeficiency Virus. On December 15, 1988, John Doe was informed that he might have received a contaminated unit of blood and should have his blood tested. He went for testing to the Mayo Clinic in Rochester, Minnesota on December 16; he and plaintiff learned that day that he had tested HIV antibody positive. They filed this suit on October 18, 1991.

## OPINION

Because defendant has been held not to be a health care provider, it cannot avail itself of the provisions of the Wisconsin statute of limitations applicable to such providers. Instead, it is subject to the general personal injury statute of limitations, Wis.Stat. § 893.54, which gives injured persons three years after the cause of action accrues in which to sue. Tort actions accrue on "the date the injury is discovered or with reasonable diligence should be discovered, whichever occurs first." *Hansen v. A.H. Robins,* 113 Wis.2d 550, 335 N.W.2d 578, 583 (1983). If Wisconsin's statute applies, plaintiff's suit is timely, because it was filed within three years after plaintiff and her husband learned that he had been injured by the tainted transfusion. If the comparable Minnesota statute applies, as defendant contends, plaintiff's suit would be time-barred because Minnesota law provides that tort actions must be brought within six years of the occurrence of the damage, Minn. Stat. § 541.05(5); *Dalton v. Dow Chem. Co.,* 280 Minn. 147, 158 N.W.2d 580, 585 (1986), and the Minnesota courts have rejected application of a "discovery" rule.

Plaintiff contends that defendant should be prohibited from arguing the applicability of Minnesota's statute of limitations because it made no reference to the possible applicability of the Minnesota statute of limitations in its briefs and arguments before either the Court of Appeals for the Seventh Circuit or the Supreme Court of Wisconsin.

Instead, defendant represented that the only issue was which of two Wisconsin statutes of limitations applied. I agree with defendant that it has not waived its right to argue this issue. Defendant's original motion for summary judgment was granted when I held that defendant was a health care provider subject to the shorter medical malpractice statute of limitations. Because this conclusion meant that plaintiff's claim was barred under the laws of both states, it was unnecessary to consider the possible conflict of Minnesota and Wisconsin law. Defendant had no reason to raise the conflict issue until after my holding had been overturned and the conflict became relevant.

In any event, it is a moot point whether defendant waived its right to argue the applicability of the Minnesota statute, because Wisconsin's borrowing law dictates the applicability of the Wisconsin statute of limitations, albeit obliquely. The borrowing statute, Wis.Stat. § 893.07, provides:

> (1) If an action is brought in this state on a foreign cause of action and the foreign period of limitation which applies has expired, no action may be maintained in this state.
>
> (2) If an action is brought in this state on a foreign cause of action and the foreign period of limitations which applies to that action has not expired, but the applicable Wisconsin period of limitation has expired, no action may be maintained in this state.

Although the statute uses the term, "foreign cause of action," the Wisconsin supreme court has held that the term is synonymous with the phrase used in the former borrowing statute, Wis.Stat. § 893.205(1): "injuries to the person, received without this state." *Guertin v. Harbour Assur. Co. of Bermuda,* 141 Wis.2d 622, 630, 415 N.W.2d 831, 834 (1987). Plaintiff's husband was injured in Wisconsin at St. Joseph's Hospital; therefore, plaintiff's cause of action is not a foreign one. The outcome would have been different had the Wisconsin courts interpreted the term, "foreign cause of action," as referring to the place where the last element of the tort, the discovery, occurred. *Cf. Renfroe v. Eli Lilly & Co.,* 541 F.Supp. 805, 807 (E.D.Mo.), *aff'd,* 686 F.2d 642 (8th Cir.1982) (cause of action accrued where final element of cause of action came into being; if plaintiff learned of definite link between her DES exposure and her cancer while living in California, California's statute of limitations would apply).

Defendant contends that the borrowing statute applies only to cases in which the plaintiff was injured out of state. It maintains that in cases arising out of injuries incurred in Wisconsin, the court must apply the choice of law analysis for conflicts of state law. Defendant misapprehends the significance of the Wisconsin borrowing statute and the fact that it was enacted precisely for the purpose of eliminating difficult choice of law determinations. The state establishes a bright line that "allows predictability in an area previously fraught with confusion." *Guertin,* 141 Wis.2d at 635, 415 N.W.2d at 836. Under § 893.07, the place of injury determines the applicable period of limitation. "Those injured within [Wisconsin] are subject only to Wisconsin's statute of limitations, whereas those injured outside of the state may be subject to more than one state's limitation statutes." *Id.* at 634, 415 N.W.2d at 836. The state supreme court has rejected the argument defendant makes as confusing two separate conflicts issues: the selection of law to resolve substantive issues in an action that is timely filed in a Wisconsin court and the determination of the timeliness of the action, which is resolved in Wisconsin by the Wisconsin borrowing statute. *Id.* at 630–31, 415 N.W.2d at 834.

Although *Guertin* involved a foreign injury, the court's discussion of the challenged constitutionality of the borrowing statute leaves no doubt that the court understood it was implicit in the statute that persons injured within Wisconsin are subject to Wisconsin's statutes of limitations. The defendant had challenged the borrowing statute as violative of the equal protection clause because it did exactly what defendant says it does not do: treat persons with out-of-state injuries differently from persons with in-state injuries, denying the person with the out-of-state injury the "benefit of Wisconsin limitation statutes which residents injured within the state would receive." *Id.* at 633,

415 N.W.2d at 835. The court did not say that the borrowing statute did not work in that manner. Rather, it agreed that it did make such a distinction, but held that there was a rational basis for the distinction: the state's interest in obviating uncertainty about the applicability of limitation statutes and protecting parties by increasing predictability. *Id.* at 634–35, 415 N.W.2d at 836.

There is no logic to defendant's reading of the borrowing statute as creating certainty only for persons injured out of state. Its reading would render meaningless the intent attributed to the legislature by the supreme court: protecting "all parties" from uncertainty by the creation of a bright line rule. *Id.*

Plaintiff's husband was injured in Wisconsin. Therefore, Wisconsin law supplies the applicable statute of limitations. Plaintiff's suit is timely.

ORDER

IT IS ORDERED that defendant's motion for judgment on the pleadings with respect to plaintiff's demand for punitive damages is GRANTED; defendant's motion to strike plaintiff's demand for a jury trial is DENIED; and defendant's motion for summary judgment on the ground that plaintiff's action is barred by the running of the applicable statute of limitations is DENIED.