Joanne TERRANOVA, Frank Terranova, Jr., Victoria Terranova, Marianne Terranova, Joanne Jody Terranova and F & A Dairy of California, Inc., Plaintiffs,

v.

Angelo TERRANOVA, F & A Dairy Products, Inc., Helmholdt & Co. and Harold Bayle, Defendants.

No. 94–C–543–C.

United States District Court, W.D. Wisconsin.

April 12, 1995.

Allen A. Arntsen, Foley & Lardner, Madison, WI, for Joanne Terranova, Frank Jr. Terranova, Victoria Terranova, Marianne Terranova, Joanne Jody Terranova, F & A Dairy of California, Inc.

Blair Rosenthal, Winthrop & Weinstine, Minneapolis, MN, for Angelo Terranova, F & A Dairy Products, Inc.

Barbara J. Janaszek, Whyte Hirschboeck & Dudek, S.C., Milwaukee, WI, for Helmholdt & Co., Harold Bayle.

## OPINION AND ORDER

CRABB, Chief Judge.

This is a diversity action arising from the 1988 division of a family owned business and a subsequent tax assessment by the State of California against members of one side of the family based on capital assets they received in the breakup. As the parties against whom the tax was assessed, plaintiffs seek reimbursement for all or part of this liability from their former business partners and their former accountants under various theories sounding in both tort and breach of contract. The case is before the court on defendants' motion for summary judgment, grounded on the assertion that plaintiffs' claims are subject to and time-barred by California's applicable statutes of limitations.[1] Plaintiffs oppose the motion, contending that their claims are instead subject to as well as timely under the statutes of limitation provided by the laws of Wisconsin.

For the reasons expressed below, defendants' motion will be granted in part and denied in part. I conclude that all of plaintiffs' claims sounding in tort are "foreign cause[s] of action" under Wisconsin's borrowing statute and are subject to and barred by the applicable California statutes of limitation. Plaintiffs' additional contract claims for indemnification, however, are not "foreign" and are timely under the applicable Wisconsin periods of limitation.

For the purpose of deciding this motion for summary judgment, I find as undisputed the following material facts.

## UNDISPUTED FACTS

The five individually named plaintiffs—Joanne Terranova, Frank Terranova, Jr., Victoria Terranova, Marianne Terranova, and Joanne Jody Terranova—are surviving relatives of Frank Terranova, Sr., who died in August 1987. All are California citizens. They own and control plaintiff F & A Dairy

of California, a California corporation with its principal place of business in California. Defendant Angelo Terranova is the brother of Frank Terranova, Sr. He is a citizen of Wisconsin. Defendant F & A Dairy Products, Inc. is a Wisconsin corporation with its principal place of business in Wisconsin, owned and controlled by Angelo and his family. Defendant Harold Bayle is a certified public accountant and a citizen of Michigan. Since the early 1980s, Bayle has been associated professionally with defendant Helmholdt & Co., a Michigan partnership with its principal place of business in Michigan.

Prior to his death, Frank Terranova and his family along with his brother Angelo Terranova and Angelo's family owned and operated F & A Corporation and its several subsidiaries, including plaintiff F & A Dairy of California and defendant F & A Dairy Products, Inc. These corporations, known collectively as the F & A Companies, were engaged primarily in the business of producing and distributing cheese. Frank served as the F & A Companies' president, Angelo as vice-president.

In the 1970s, Frank Terranova moved his family to California and attempted to establish a presence for the F & A Companies in the California cheese market. Apparently he was successful because from 1984 through 1986, F & A engaged in the construction of a cheese plant there, in Newman. To outfit this plant, F & A purchased several large pieces of industrial equipment costing millions. Angelo Terranova supervised the project because Frank's health was failing. Angelo was advised by defendant Harold Bayle, the F & A Companies' accountant, that the equipment either could be or would be subject to a state of California sales or use tax. He ignored Bayle's advice and chose not to pay the tax, and Bayle never reflected the potential tax liability on the F & A Companies' books.

During the period that Frank Terranova was ill, disputes arose between the two sides

---

1. Two separate motions for summary judgment were actually filed, one by defendants Angelo Terranova and F & A Dairy Products, Inc. (the "Wisconsin defendants") and one by defendants Helmholdt & Co. and Harold Bayle (the "accountant defendants"). Because both motions are based on the argument that plaintiffs' claims are time-barred, I have consolidated them and rule on each in this opinion and order. For ease of reference I refer to the two motions simply as "defendants' motion."

of the Terranova family regarding the operations of the F & A Companies. These differences came to a head after Frank's death, when the two sides decided to end their business relationship and entered into a formal "Agreement and Plan of Separation and Reorganization." The terms of the separation agreement were negotiated in Los Angeles, California, in September and November 1987 and June 1988, by members of each side of the family along with their advisers. The parties also met once in Minneapolis, Minnesota, and their attorneys engaged in numerous discussions and negotiations over the telephone and by facsimile. Harold Bayle and Helmholdt & Co. provided accounting services to the parties relating to the separation agreement, including the valuation and division of assets. The separation agreement was executed on August 3, 1988. A face-to-face closing in Upland, California had been contemplated by the parties but never occurred; instead, the parties simply exchanged signature papers through the mail.

The separation agreement effectuated a number of complex transactions between the parties. At bottom, though, it separated ownership of the assets and operations of the F & A Companies such that plaintiffs obtained sole control of the California operations and the Wisconsin defendants obtained sole control of the Wisconsin operations. As for the specific provisions relevant to this suit, in sections 2.3 and 3.2 the parties agreed to remain responsible for fifty percent of the "Outside Indebtedness" of the F & A Companies. In section 12, the parties agreed to indemnify and hold each other harmless from and against fifty percent (50%) of all "claims, demands, damages, losses, liabilities, costs and expenses, including reasonable attorneys' fees, arising out of or in connection with ... any alleged or actual activities of the [F & A Companies] prior to the closing." The parties agreed also to remain solely responsible for and to indemnify and hold each other harmless "from and against any and all claims, demands, damages, losses, liabilities, costs and expenses, including reasonable attorneys' fees, arising out of or in connection with the deliberate wrongful act of the indemnifying parties." Finally, in section 13, the parties represented and warranted to each other that except as set forth elsewhere in the agreement, no party was

> aware of any obligations ... for which another party hereto may become liable in the future. Each party agrees to indemnify and hold the other harmless from and against any and all claims, demands, damages, losses, liabilities, costs and expenses, including attorneys' fees arising out of or in connection with the breach of the foregoing representation and warranty.

A little over a year after the agreement was executed, in either late December 1989 or early January 1990, the California Board of Equalization notified plaintiffs that the board was performing a use tax audit of their company relating to the equipment purchased for the Newman plant. From this point forward plaintiffs negotiated extensively with the board to arrive at a final appraisal of their liability and as a result incurred significant accounting, legal, and other professional expenses.

On May 30, 1990, although the full amount of plaintiffs' delinquent tax liability had not yet been determined, plaintiffs paid the state of California $129,297.30, representing a portion of the taxes owed, in an attempt to limit the accrual of penalties and interest. The total balance of the assessed tax remained in dispute until July 1990, when the Board of Equalization issued a field audit report indicating that plaintiffs owed a total of $266,-370.48, plus interest and penalties. The vast majority of this tax liability related to the equipment purchased for the Newman plant.

In October 1990, plaintiffs demanded that defendants indemnify them for the taxes on the Newman plant equipment. Defendants rejected plaintiffs' demands in January 1991, but suggested that the parties meet to resolve their dispute. To date, plaintiffs have made the following payments, totaling $189,-125.56, to the state of California for back sales and use taxes, interest and penalties: (1) $129,297.30 on May 30, 1990; (2) $39,-828.26 on July 12, 1994; and (3) $20,000.00 on October 18, 1994. Plaintiffs commenced this action on July 27, 1994.

## OPINION

Plaintiffs allege eight separate causes of action. All are based essentially on

defendants' alleged failure either to disclose to plaintiffs the California tax liability before the separation agreement was executed or to indemnify plaintiffs for any portion of the liability. Angelo Terranova is charged with breach of fiduciary duty (Claim I); misrepresentation by non-disclosure (Claim III); and breach of the implied covenant of good faith and fair dealing (Claim V).[2] F & A Dairy Products, Inc. is charged with breach of warranty based on the written contract (Claim IV). Together these defendants are charged with breach of contract (Claim II). Plaintiffs' final three claims are asserted against the accountant defendants for breach of fiduciary duty (Claim VI); misrepresentation by non-disclosure (Claim VII); and professional negligence (Claim VIII).

▆ A party moving for summary judgment will prevail if there is no genuine issue of material fact and the moving party is entitled to judgment as a matter of law. Fed.R.Civ.P. 56(c); *Celotex Corp. v. Catrett,* 477 U.S. 317, 322, 106 S.Ct. 2548, 2552, 91 L.Ed.2d 265 (1986); *Indiana Grocery, Inc. v. Super Valu Stores, Inc.,* 864 F.2d 1409, 1412 (7th Cir.1989). A dispute about a material fact is genuine if "the evidence is such that a reasonable jury could return a verdict for the nonmoving party." *Anderson v. Liberty Lobby, Inc.,* 477 U.S. 242, 248, 106 S.Ct. 2505, 2510, 91 L.Ed.2d 202 (1986).

A. *The Applicable Statutes of Limitation*

▆ The first issue presented by defendants' motion is whether plaintiffs' claims are subject to the statutes of limitation of California or Wisconsin. Because subject matter jurisdiction in this case is founded on diversity, it is necessary to follow the choice of law

principles of the state of Wisconsin, the state in which this court sits. *Klaxon Co. v. Stentor Electric Mfg. Co.,* 313 U.S. 487, 496–98, 61 S.Ct. 1020, 1021–22, 85 L.Ed. 1477 (1941); *Beard v. J.I. Case Co.,* 823 F.2d 1095, 1099 (7th Cir.1987). To that end, the rule in Wisconsin is the same as it is in most jurisdictions: the forum's statutes of limitation govern unless the state's borrowing statute applies. The Wisconsin borrowing statute provides, in relevant part: "If an action is brought in this state on a foreign cause of action and the foreign period of limitation which applies has expired, no action may be maintained in this state." Wis.Stat. § 893.07(1). In other words, suits filed in Wisconsin based on a "foreign cause of action" are time-barred unless brought within the limitations period of both Wisconsin and the foreign jurisdiction. This statute effectuates a Wisconsin legislative choice-of-law policy that the shortest possible limitations period should govern actions litigated here that could have been brought elsewhere, thereby eliminating any incentive plaintiffs might have to forum shop for a more favorable limitations period. *Guertin v. Harbour Assurance Co.,* 141 Wis.2d 622, 631, 415 N.W.2d 831, 835 (1987).

Defendants contend that the Wisconsin borrowing statute is applicable and requires this court to measure the timeliness of plaintiffs' claims with reference to the applicable California statutes of limitation. Plaintiffs argue with equal vigor that the borrowing statute is not applicable and that their claims are therefore subject to the limitations periods supplied by the laws of Wisconsin. Because the parties agree that the California statutes of limitation that would govern plaintiffs' claims are shorter than those of

---

2. In Claim V, plaintiffs allege that Angelo Terranova breached his obligation to act in good faith and deal fairly by failing to alert plaintiffs of the California tax liability when negotiating the separation agreement. Under both Wisconsin and California law, every contract implies a covenant of good faith and fair dealing, *see Foley v. Interactive Data Corp.,* 47 Cal.3d 654, 689–90, 254 Cal.Rptr. 211, 765 P.2d 373 (1988); *Chayka v. Santini,* 47 Wis.2d 102, 108, 176 N.W.2d 561, 564 (1970), but this covenant extends only to the performance or enforcement of a contract and not to precontractual negotiations. *See Racine & Laramie, Ltd. v. Dept. of Parks & Recreation,* 11

Cal.App.4th 1026, 1032, 14 Cal.Rptr.2d 335 (1992) (citations omitted); *Ford Motor Co. v. Lyons,* 137 Wis.2d 397, 424, 405 N.W.2d 354, 365 (Ct.App.1987) (in Wisconsin, judicial recognition of implied covenant of good faith does not even extend beyond the insurance setting). Absent an existing contract, there is no legal obligation to deal fairly or in good faith. *Racine & Laramie, Ltd.,* 11 Cal.App.4th at 1032, 14 Cal. Rptr.2d 335 (citations omitted). Because plaintiffs' Claim V concerns only conduct during the negotiation of the separation agreement, it is not a cognizable claim and will be dismissed on the court's own motion.

**1278**

Wisconsin, resolution of this issue turns on whether any or all of plaintiffs' eight claims are "foreign causes of action" within the meaning of § 893.07(1).[3]

The Supreme Court of Wisconsin has addressed the nature of a "foreign cause of action" on only two occasions. Each case arose in the context of a personal injury tort action and in each the court held, unequivocally, that a tort action is "foreign" for purposes of the borrowing statute when the injury giving rise to liability was incurred outside Wisconsin. *Scott v. First State Insurance Co.*, 155 Wis.2d 608, 613, 456 N.W.2d 152, 154 (1990); *Guertin*, 141 Wis.2d at 629–31, 415 N.W.2d at 834.

*Guertin* was a personal injury suit brought by a truck driver who fell from the fuel tank of his semi-tractor. The accident occurred in Illinois, but the plaintiff argued that his action was not "foreign" because it was more significantly related to Wisconsin. The supreme court disagreed, holding that the plaintiff's action was a "foreign cause of action" because plaintiff incurred the injury giving rise to his claims in Illinois, even though his location there at the time might have been mere happenstance. *Id.* at 629–31, 415 N.W.2d at 834. According to the court, following the plaintiff's suggestion and employing a "significant contacts" test to evaluate the timeliness of his action would defeat the express provisions and policies served by the borrowing statute. *Id.* at 631–32, 415 N.W.2d at 835. In fact, the borrowing statute "would add little or nothing to the common law of Wisconsin if by the use of the expression 'foreign cause of action' the legislators meant to require the courts to go through their usual conflict of laws analysis in deciding whether the foreign period of limitations is a bar." *Id.* at 630, 415 N.W.2d at 834 (quoting *Johnson v. Deltadynamics, Inc.*, 813 F.2d 944, 946 (7th Cir.1987)).

The second case raising a "foreign cause of action" issue, *Scott*, was a products liability action brought by a plaintiff injured in Alberta, Canada, while working with a piece of farm equipment either designed, manufactured, or sold by Wisconsin residents. The threshold question was whether the borrowing statute applied, thereby making the

plaintiff's claims subject to the limitations period provided by the laws of Canada, even though the defendants' negligence presumably occurred in Wisconsin. The answer was a resounding "yes": "Adhering to *Guertin*, we conclude that because Alberta is the place where the plaintiffs were injured, the Alberta period of limitations is the applicable foreign period of limitation in this case under sec. 893.07(1)." *Id.*, 155 Wis.2d at 613, 456 N.W.2d at 154.

**1. Plaintiffs' tort causes of action**

 Five of plaintiffs' claims sound in tort. They are Claim I (breach of fiduciary duty) and Claim III (misrepresentation by nondisclosure), both asserted against Angelo Terranova, and Claim VI (breach of fiduciary duty), Claim VII (misrepresentation by nondisclosure), and Claim VIII (professional negligence), all asserted against the accountant defendants. The parties agree that whether any of these claims are "foreign" turns on whether the injuries associated with them were incurred outside Wisconsin, as *Guertin* teaches, even though *Guertin* did not involve purely economic harms. I agree and conclude that each of these tort claims is a foreign cause of action under § 893.07 because the economic effects were felt only in California, the place of plaintiffs' residence.

In reaching this conclusion I find particularly persuasive the decisions of the courts in the Second Circuit, which routinely hear complex cases involving purely economic harm, often in the securities fraud context. Like Wisconsin's, New York's borrowing statute is triggered in tort actions when the "place of injury" giving rise to the cause of action is beyond the borders of the state. *See, e.g., Barsam v. Pure Tech Int'l, Inc.*, 864 F.Supp. 1440, 1453–55 (S.D.N.Y.1994) (describing the Second Circuit's "adherence to the traditional place-of-injury test"). Applying this standard in cases involving economic harm, the courts of the Second Circuit have held consistently that the place of injury is where the economic impact of defendant's

3. The parties agree that under Wisconsin law, each of plaintiffs' claims would be subject to a six-year limitations period, whereas under California law, these periods would be appreciably shorter, anywhere from two to four years. *See* discussion *infra*, part B.

conduct is felt, normally the plaintiff's residence. *See Arneil v. Ramsey,* 550 F.2d 774, 779 (2d Cir.1977); ("To the extent [plaintiffs] became poorer men, they became poorer Washingtonians."); *Walsh v. Maryland Bank, N.A.,* 806 F.Supp. 437, 444 (S.D.N.Y. 1992) ("[P]laintiff was a resident of Massachusetts when he submitted his claim. That is where he felt the economic impact of nonpayment."); *Heineman v. S & S Machinery Co.,* 707 F.Supp. 86, 89 (E.D.N.Y.1989) ("The [place of injury] rule asks the practical question 'who became poorer and where did they become poorer?' ") (citation omitted); *Gorlin v. Bond Richman & Co.,* 706 F.Supp. 236, 240 (S.D.N.Y.1989) (absent unusual circumstances, the economic impact, and thus the injury, is felt in the state in which the plaintiff resides). This approach and the court of appeals' pithy phrase have gained acceptance in other jurisdictions as well. *See, e.g., Sedco Intern., S.A. v. Cory,* 522 F.Supp. 254, 316–17 (S.D.Iowa 1981) ("To the extent [plaintiff] became a poorer man, he became principally a poorer Iowan.") (citing *Arneil,* 550 F.2d at 780).

Plaintiffs attempt to escape this conclusion by contending that their injuries arose not in California but in Wisconsin. Their theory is that as a result of defendants' tortious conduct (lack of full disclosure) they received less consideration for the Wisconsin assets of the F & A Companies that they relinquished in connection with the separation agreement. In other words, the California tax liability and related expenses represent only the *measure* of their injuries, not their *actual* injuries.

Plaintiffs' theory is creative and certainly not, as defendants contend, "abject nonsense" or "absurd." Ultimately, however, it is not persuasive. The facts of this case demonstrate how the "place of injury" standard enunciated in *Guertin* can be more problematic to apply in tort cases involving purely economic injuries as opposed to personal injuries, because the place of a purely economic injury may be harder to pin to a single location, especially where the alleged tortious conduct involved a series of transactions. In this context, a single definition of "injury" can be more elusive.

But the Wisconsin Supreme Court is concerned with enunciating a clear standard for assessing whether an action is "foreign" under § 893.07. One of the policies of the borrowing statute is "the avoidance of uncertainty in assessing the timeliness of bringing an action in this state without the necessity of a court hearing to make such a determination." *Guertin,* 141 Wis.2d at 631–32, 415 N.W.2d at 835. It advances this goal to follow the Second Circuit's approach of determining the place where an economic injury occurred to be the place where the economic impact of that injury is felt. In most circumstances, it will be relatively easy to make such a determination. At least it is in this case. To borrow the phrase from the Second Circuit, to the extent plaintiffs are poorer, they are poorer Californians. California is the place where plaintiffs incurred and paid the expenses for which they now seek indemnification.

Adopting plaintiffs' approach, which engenders more questions than it answers, would require the court to engage in the type of "interest analysis" specifically rejected in *Guertin.* For instance, plaintiffs argue that plaintiffs' injuries arose in Wisconsin because they failed to receive full consideration for the Wisconsin assets they surrendered to defendants. By the same token, however, it could be said that their injuries arose in California on the theory that they were overcharged for the California assets relinquished to them by defendants. Or their injuries arose in Minnesota because under the separation agreement plaintiffs also relinquished their interest in a Minnesota corporation.

In sum, I conclude that under § 893.07(1), plaintiffs' injuries were received only in California, the place of their residence. Consequently, plaintiffs' tort claims are "foreign cause[s] of action" and their timeliness must be evaluated with reference to the applicable California statutes of limitation. This is the result I believe the Wisconsin Supreme Court would have reached had it been presented with this issue. *See Todd v. Societe Bic, S.A.,* 21 F.3d 1402, 1412 (7th Cir.) (the court's role in a diversity action is to predict what the state's highest court would do if

presented with the same issue), *cert. denied,* —— U.S. ——, 115 S.Ct. 359, 130 L.Ed.2d 312 (1994).

b. *Plaintiffs' contract causes of action*

■ Plaintiffs' two remaining claims sound in contract. Both are for indemnification. In Claim II, plaintiffs charge Angelo Terranova with breaching the separation agreement provisions requiring him to (1) indemnify plaintiffs for 50% of the liabilities arising out of the activities of the F & A Companies before the breakup; and (2) indemnify plaintiffs for 100% of the liabilities arising out of or in connection with his deliberate wrongful acts. Claim IV relates to a separation agreement warranty made by F & A Dairy Products, Inc. that it was not aware of any of its own obligations for which plaintiffs may become liable in the future and that it would indemnify plaintiffs against any losses arising out of or in connection with the breach of its warranties. According to the allegations of Claim IV, defendants' failure to indemnify plaintiffs for the California tax liability constitutes a breach of these provisions.

Application of the borrowing statute to actions founded upon a contract is an area in which the Wisconsin courts provide little guidance. It also is an area of conflicts law generally regarded as "fraught with ambiguity." John W. Ester, *Borrowing Statutes of Limitation and Conflict of Laws,* 15 Fla. L.Rev. 33, 48 (1962). The Court of Appeals for the Seventh Circuit recognized the difficulties in *Johnson v. Deltadynamics, Inc.,* 813 F.2d at 946, when it hypothesized that in the case of a contract dispute, interpreting the phrase "foreign cause of action" as used in § 893.07 may be more complex than in a tort case, because a contract's "location is not easily pinned to a particular state if, for example, as is common, the contract is negotiated in one state, signed in another, and performed in a third."

Only two reported decisions interpret Wisconsin's borrowing statute in the context of a contract dispute. *See Office Supply Co., Inc. v. Basic/Four Corp.,* 538 F.Supp. 776 (E.D.Wis.1982); *McMahon v. Pennsylvania Life Insurance Co.,* 891 F.2d 1251 (7th Cir. 1989). Both are inapposite. In *Office Sup-*

*ply,* the district court determined whether the contract dispute at issue was a "foreign cause of action" by using a traditional conflicts analysis, that is, whether the dispute had more significant contacts with Wisconsin or with the foreign jurisdiction. Although *Guertin,* decided over five years later, did not involve a contract dispute, its unequivocal rejection of a balancing of interests approach indicates strongly that the Wisconsin Supreme Court would reject a similar approach in the contracts context. In *McMahon,* the Court of Appeals for the Seventh Circuit found a contract dispute not to be a "foreign cause of action" under § 893.07 but did so on the narrow basis that the plaintiff's claim—for a breach of the implied duty of good faith and fair dealing in his employment contract—was a cause of action recognized only in the foreign jurisdiction and not in Wisconsin. That unique situation is not present here.

Despite the lack of authority in this jurisdiction, the majority of courts that have addressed this question have held that their states' borrowing statutes are triggered in actions founded upon contract when the contract was to be performed in a foreign jurisdiction. *See* Ester, *supra* at 50. In the more specific context of actions for indemnification on a written contract, the limited number of cases addressing this issue appear to follow suit, holding that an indemnification claim is "foreign" if the final significant event giving rise to the action occurred outside the forum state. *See, e.g., Mack Trucks, Inc. v. Bendix–Westinghouse Automotive Air Brake Co.,* 372 F.2d 18, 20 (3d Cir.1966) (cause of action arises *"where* as well as *when* the final significant event that is essential to a suable claim occurs") (emphasis added), *cert. denied,* 387 U.S. 930, 87 S.Ct. 2053, 18 L.Ed.2d 992 (1967) (citing *Bank of Nova Scotia v. San Miguel,* 196 F.2d 950 (1st Cir.1952); *Orschel v. Rothschild,* 238 Ill.App. 353 (1925); *Runkle v. Pullin,* 49 Ind.App. 619, 97 N.E. 956 (1912)).

I am persuaded that the standard announced in *Mack Trucks* is consistent with *Guertin* and the one most likely to find favor with the Wisconsin Supreme Court. In *Guertin,* the court made the logical choice of

the "place of injury" as the determinative factor whether a particular tort is a "foreign cause of action" because "[a] tort is not complete till the victim is injured." *Johnson,* 813 F.2d at 945–46. In the contracts context, the parallel event is the breach, the "final significant event that is essential to a suable claim." *Mack Trucks,* 372 F.2d at 20.

In this case, the alleged breach of contract occurred in January 1991, when defendants rejected plaintiffs' demands for indemnification. No particular place for performance having been specifically designated in the separation agreement, that breach occurred in Wisconsin and was caused by Wisconsin residents. Consequently, plaintiffs' claims for indemnification are not "foreign cause[s] of action" under § 893.07 and therefore are subject to Wisconsin's and not California's statutes of limitation.

B. *The Effect of the Applicable California and Wisconsin Statutes of Limitation*

With the conclusion that under § 893.07(1), plaintiffs' tort claims are subject to California's statutes of limitation and plaintiffs' indemnification claims are subject to Wisconsin's, the question becomes whether any of these periods have expired. Because plaintiffs virtually concede that their tort claims are time-barred if subject to California's statutes of limitation, I will address these claims first.

1. *Plaintiffs' tort causes of action*

■ Two of plaintiffs tort claims are for misrepresentation based on non-disclosure of the California tax liability: one is asserted against the Wisconsin defendants (Claim III), the other against the accountant defendants (Claim VII). Under the applicable California statute of limitations, Cal.Code Civ.P. § 338, a misrepresentation cause of action must be brought within three years from the day the plaintiff discovers or reasonably could have discovered the facts constituting the fraud. *Krieger v. Nick Alexander Imports, Inc.,* 234 Cal.App.3d 205, 219, 285 Cal.Rptr. 717 (1991). Here, that day came in late December 1989 or in early January 1990, when plaintiffs learned that the state of California was conducting a sales and use tax audit of their corporation. At the latest, it was on May 30, 1990, when plaintiffs paid $129,297.30 of the tax liability to the state of California. Because plaintiffs filed the present action on July 27, 1994—more than three years after either event—their misrepresentation claims are time-barred.

■ The same can be said for plaintiffs' two tort claims for breach of fiduciary duty against the Wisconsin defendants (Claim I) and the accountant defendants (Claim VI). Under California law, Cal.Code Civ.P. § 343, breach of fiduciary duty claims must be brought within four years of the day plaintiffs discover or in the exercise of reasonable diligence could have discovered that facts had been concealed. *Stalberg v. Western Title Insurance, Co.,* 230 Cal.App.3d 1223, 1230, 282 Cal.Rptr. 43 (1991) (citing *Sanchez v. South Hoover Hospital,* 18 Cal.3d 93, 132 Cal.Rptr. 657, 553 P.2d 1129 (1976)). Because the latest this could have been was May 30, 1990, the day plaintiffs paid $129,-297.30 to the state of California towards satisfying their liability, plaintiffs' breach of fiduciary duty claims also are time-barred because they were not filed until more than four years later.

■ In the final tort claim (Claim VI), plaintiffs charge the accountant defendants with professional negligence, contending that when the equipment for the Newman plant was purchased defendants neither assured that the appropriate sales or use taxes were paid to the state nor disclosed this potential liability to other parties involved in the ownership or management of F & A Dairy of California. In California, a claim against an accountant for malpractice must be filed within two years, Cal.Code Civ.P. § 339, and begins to accrue when the plaintiff both sustains appreciable and actual harm and discovers or should have discovered the wrongful acts. *Electronic Equipment Express, Inc. v. Donald H. Seiler & Co.,* 122 Cal.App.3d 834, 848, 176 Cal.Rptr. 239 (1981). Because on the day of their first payment to the state, May 30, 1990, plaintiffs certainly suffered "appreciable and actual harm" and should have been aware of the facts underlying their negligence claim, this cause of action is barred.

**1282**

### 2. *Plaintiffs' indemnification causes of action*

⬛ Plaintiffs' two causes of action subject to Wisconsin's rather than California's statutes of limitation are Claims II and IV. Both are claims for indemnification under the written separation agreement, and both are timely under the applicable six-year Wisconsin statute of limitations for actions "upon any contract, obligation or liability." Wis. Stat. § 893.43. Because the separation agreement containing the indemnification provisions was executed on August 3, 1988, fewer than six years before the date this suit was commenced, plaintiffs' indemnification claims are timely, irrespective of when their claims began to accrue.

### ORDER

IT IS ORDERED that defendants' motion for summary judgment on the ground that the applicable statutes of limitation have expired is GRANTED with respect to plaintiffs' Claims I and III, asserted against Angelo Terranova; GRANTED with respect to plaintiffs' Claims VI, VII, and VIII, asserted against Helmholdt & Co. and Harold Bayle; DENIED with respect to plaintiffs' Claim II, asserted against Angelo Terranova and F & A Dairy Products, Inc.; and DENIED with respect to plaintiffs' Claim IV, asserted against F & A Dairy Products, Inc. Plaintiffs' Claim V asserted against Angelo Terranova is DISMISSED sua sponte as not cognizable under the laws of either Wisconsin or California. Further proceedings will involve only defendants Angelo Terranova and F & A Dairy Products, Inc. and only plaintiffs' Claims II and IV.