Paul ABRAHAM, Plaintiff-Appellant,

v.

GENERAL CASUALTY COMPANY OF WISCONSIN, Defendant-Respondent.

Supreme Court

*No. 95–2918. Oral argument November 5, 1997.—Decided April 17, 1998.*

(Also reported in 576 N.W.2d 46.)

For the plaintiff-appellant there were briefs (in the Court of Appeals) by *James R. Koby, John H. Schroth,* and *Parke O'Flaherty, Ltd.,* LaCrosse and oral argument by *James R. Koby.*

For the defendant-respondent there was a brief (in the Court of Appeals) by *Michael W. Gill, Paul E. Gut-*

*tormsson* and *Hale, Skemp, Hanson & Skemp,* LaCrosse and oral argument by *Michael W. Gill.*

¶ 1.   JON P. WILCOX, J.   This case is before the court on certification from the court of appeals following an order of the Circuit Court for La Crosse County, Dennis G. Montabon, Judge, which dismissed the appellant Paul Abraham's (Abraham) complaint for failure to file his cause of action within the applicable statute of limitations. Abraham appealed.

¶ 2.   On certification, we consider whether Abraham's action for breach of contract is a "foreign cause of action" under Wisconsin's borrowing statute, Wis. Stat. § 893.07 (1993–94).[1] We hold that Abraham's cause of action is not "foreign" because the final significant event giving rise to his suable claim—the alleged breach of contract by the respondent General Casualty Company of Wisconsin (General Casualty)—occurred within the state of Wisconsin. Therefore, we conclude that Abraham was not required to file his action within

---

[1] All future references to Wis. Stats. are to the 1993–94 version of the statutes unless otherwise indicated.

Wis. Stat. § 893.07 provides:

**Application of foreign statutes of limitation.**   (1) If an action is brought in this state on a foreign cause of action and the foreign period of limitation which applies has expired, no action may be maintained in this state.

(2)   If an action is brought in this state on a foreign cause of action and the foreign period of limitation which applies to that action has not expired, but the applicable Wisconsin period of limitation has expired, no action may be maintained in this state.

Although this decision encompasses the application of both subsections to causes of action sounding in contract, we note that this case emanates from the application of § 893.07(1) alone.

the foreign jurisdiction's applicable statute of limitations, Fla. Stat. ch. 95.11(2)(b) (1994).[2] Rather, we hold that Wisconsin's six-year statute of limitations for actions sounding in contract, Wis. Stat. § 893.43,[3] applies to Abraham's claim to render it timely. Accordingly, we reverse the order of the circuit court which dismissed Abraham's cause of action as untimely.

¶ 3. The relevant facts are not in dispute. In September 1988, following his completion of graduate studies at the University of Wisconsin-La Crosse, Abraham commenced employment as a cardiac therapist intern at Lee Memorial Hospital in Fort Myers, Florida. On October 4, 1988, Abraham was struck and

[2] Fla. Stat. ch. 95.11 (1994) provides in relevant part:

**Limitations other than for the recovery of real property.**—Actions other than for recovery of real property shall be commenced as follows:

. . .

(2) WITHIN FIVE YEARS.—

. . .

(b) A legal or equitable action on a contract, obligation, or liability founded on a written instrument.

[3] Wis. Stat. § 893.43 provides:

**Action on contract.** An action upon any contract, obligation or liability, express or implied, including an action to recover fees for professional services, except those mentioned in s. 893.40, shall be commenced within 6 years after the cause of action accrues or be barred.

Because we conclude that Abraham's cause of action was not "foreign," it is unnecessary to reach the secondary question that is presented on this appeal: assuming that Florida's five-year statute of limitations applies, whether that time period commences as of the date of injury—which would render Abraham's action untimely—or as of the date of breach, which would make the action timely.

297

injured by an automobile while riding a bicycle near Fort Myers. As a result of injuries sustained in the accident, he was admitted to Lee Memorial Hospital and was hospitalized there for a period of 17 days.

¶ 4. At the time of the accident, Abraham was insured under a policy for underinsured automobile insurance issued by General Casualty, an insurance company licensed to do business in Wisconsin and with its principal place of business in Wisconsin, with a limit of $100,000 per person and $300,000 per accident. Pursuant to this policy, General Casualty agreed to pay underinsured motorist coverage only after the limits of any applicable liability policy had been exhausted by payment of judgment or settlement.

¶ 5. In 1989, Abraham initiated settlement negotiations with State Farm Insurance Company (State Farm), the insurer for the driver of the automobile involved in the accident. On March 22, 1990, Abraham notified General Casualty that State Farm had offered its liability policy limits of $25,000 to resolve its liability. Because Abraham's claim for injuries allegedly exceeded $300,000, Abraham also notified General Casualty that it was his intention to pursue underinsured motorist benefits as provided by General Casualty's policy.

¶ 6. On September 25, 1990, Abraham notified General Casualty by letter of his intention both to accept State Farm's offer to settle for the full amount of State Farm's liability policy limits, as well as to seek no-fault liability benefits from State Farm. By that same correspondence, Abraham asked General Casualty to pay State Farm's liability policy limits and the no-fault benefits he sought as a result of the accident.

¶ 7. By letter dated October 8, 1990, General Casualty refused to pay State Farm's policy limits and

granted its permission for Abraham to accept the policy limits provided by State Farm. Subsequently, General Casualty refused to pay the underinsured motorist benefits requested by Abraham, leading Abraham to commence the present action on September 30, 1994.

¶ 8. In this action, Abraham sought a judgment declaring that General Casualty's policy provided underinsured motorist coverage to Abraham, and an order requiring General Casualty to arbitrate in good faith pursuant to Wis. Stat. § 788.03. General Casualty moved to dismiss on grounds that the applicable statute of limitations had expired. Specifically, General Casualty alleged that Abraham's lawsuit was a "foreign cause of action" within the meaning of Wisconsin's borrowing statute, Wis. Stat. § 893.07(1), and that Florida's five-year statute of limitations for actions upon contract should therefore apply to render Abraham's suit untimely. *See* Fla. Stat. ch. 95.11(2)(b) (1994); *see also State Farm Mut. Auto. Ins. Co. v. Kilbreath*, 419 So. 2d 632 (Fla. 1982) (holding that Florida statute of limitations commences on the date of the accident in an action under an uninsured/underinsured motorist insurance policy).

¶ 9. Abraham responded by asserting that his cause of action was not "foreign" within the meaning of Wis. Stat. § 893.07. Rather, Abraham argued that his action was a Wisconsin contract claim because Wisconsin had the most significant contacts with the insurance contract between the Wisconsin insured and the Wisconsin insurer.

¶ 10. On September 21, 1995, the circuit court granted General Casualty's motion to dismiss, holding that Abraham's lawsuit was a "foreign cause of action" because the parties' most significant contacts involving the contract were with the state of Florida. *See* Deci-

299

sion and Order at 6 ("If it were not for the Florida accident, Abraham's present cause of action would be nonexistent."). Further, the circuit court held that the five-year limitation period commenced on the date of the accident because Abraham had a claim against General Casualty that was presently enforceable as of that date. Therefore, the circuit court dismissed Abraham's action as untimely under Wisconsin's borrowing statute and the five-year Florida statute of limitations. Abraham appealed from the circuit court's order.

## I.

¶ 11.  Today we must determine how to apply Wis. Stat. § 893.07 to cases in which the underlying cause of action sounds in contract. Before proceeding to this question of first impression, we must first determine whether § 893.07 applies to contract actions. There being no explicit reference to contract actions in § 893.07, we look outside the statute to determine the legislature's intent. *See Odd S.-G. v. Carolyn S.-G.*, 194 Wis. 2d 365, 371, 533 N.W.2d 794 (1995). An examination of the legislative history of that provision as well as its purpose reveals that the borrowing statute does apply to contract actions.

¶ 12.  The predecessor statute to Wis. Stat. § 893.07(1) was Wis. Stat. § 893.205(1) (1977). That provision provided in relevant part:

> But no action to recover damages for injuries to the person, received without this state, shall be brought in any court in this state when such action is barred by any statute of limitations of actions of the state or county in which such injury was received. . . .

A plain reading of the predecessor borrowing statute suggests that it was intended to apply only to personal injury actions.

¶ 13. However, the current version of the borrowing statute, as amended in 1979, replaces the phrase "action to recover damages for injuries to the person" with the more broadly phrased "foreign cause of action." We interpret this substitution of a specific phrase for a more general one to indicate the legislature's intent to apply Wisconsin's borrowing statute beyond the narrow context of personal injury cases to causes of action similar to the case at bar.

¶ 14. Moreover, application of the borrowing statute to contract actions would be consistent with our stated understanding of the legislature's basis for enacting Wis. Stat. § 893.07. In *Guertin v. Harbour Assurance Co.*, 141 Wis. 2d 622, 631–32, 415 N.W.2d 831 (1987), we indicated:

> The manifest intent of the legislature in enacting this borrowing statute was to adopt the shortest possible limitation period for actions litigated in this state potentially subject to more than one statute of limitations. The policies advanced by such a statute include the reduction of forum shopping, the prevention of stale claims, the expedient litigation of controverted matters, and the avoidance of uncertainty in assessing the timeliness of bringing an action in this state without the necessity of a court hearing. . . .

The same concerns are present regardless of whether the cause of action sounds in tort or contract.

¶ 15. Accordingly, because the amended language of the borrowing statute indicates the legislature's intent to broaden application of the stat-

ute, and because application of the statute to causes of action sounding in contract comports with our understanding of the purposes of the statute, Wis. Stat. § 893.07(1) can be interpreted to govern contract actions. *See, e.g., McMahon v. Pennsylvania Life Ins. Co.*, 891 F.2d 1251 (7th Cir. 1989); *Johnson v. Deltadynamics, Inc.*, 813 F.2d 944, 946 (7th Cir. 1987).

## II.

¶ 16.    Having determined that Wis. Stat. § 893.07 applies to causes of action sounding in contract, we now turn to the facts of this case in order to determine the proper application of the borrowing statute to contract claims. Our review of questions of law involving the application of a statute to a particular set of facts is de novo. Therefore, we examine this issue independently of the circuit court's conclusion of law and without deference to that court's reasoning. *See Guertin*, 141 Wis. 2d at 627–28.

¶ 17.    Prior to analyzing the application of Wis. Stat. § 893.07 to contract actions, we first examine Wisconsin jurisprudence relating to the borrowing statute when the underlying cause of action sounds in tort. Although General Casualty characterizes this litigation as "a torts case under a contracts veneer," we do not interpret its choice of words to advance the argument that Abraham's action to recover underinsured motorist benefits actually sounds in tort. Rather, General Casualty appears to emphasize the unique nature of this lawsuit—one in which the claim sounds in contract, but "arise[s] from and remain[s] intertwined with underlying torts"—in order to have the bright-line test for identifying a "foreign cause of action" in tort

cases applied here.[4] Therefore, we proceed first to examine the test that has been established for cases sounding in tort, and second, to determine whether that same test should be applied to causes of action arising in contract.

## A.

¶ 18. This court has previously interpreted the phrase "foreign cause of action" as it is used in Wis. Stat. § 893.07. *See Guertin*, 141 Wis. 2d 622. In *Guertin*, a truck driver brought an action in Wisconsin alleging negligence and strict liability in tort to recover for personal injuries sustained in the state of Illinois when he fell from the fuel tank of the semi-tractor he was employed to drive. *See id.* at 625. Several of the defendants moved to dismiss Guertin's complaint, claiming that his cause of action was "foreign," and therefore barred under § 893.07 by an Illinois two-year statute of limitations for personal injuries. *See id.* at 625–26.

¶ 19. To determine whether Guertin's lawsuit was a "foreign cause of action" within the meaning of Wis. Stat. § 893.07, we were faced with two possible meanings of the phrase: a cause of action which existed because of significant contacts with another jurisdiction—frequently referred to as the "significant contacts" or "center of gravity" test, *see Wilcox v. Wilcox*, 26 Wis. 2d 617, 635, 133 N.W.2d 408 (1965)—or an action where the plaintiff's injury arises outside the forum state. *See Guertin*, 141 Wis. 2d at 628. Because

---

[4] That General Casualty does not intend to argue that Abraham's action sounds in tort is apparent from the fact that General Casualty requests this court to apply Florida's statute of limitations for *contract actions* to Abraham's claim. *See* Resp. Brief at 14; Fla. Stat. ch. 95.11(2)(b) (1994).

we concluded that the legislature intended the phrase "foreign cause of action" to be synonymous with actions " 'for injuries to the person, received without this state,' " *id.* at 629–30 (quoting former borrowing statute, Wis. Stat. § 893.205(1) (1977)), we adopted the latter interpretation of § 893.07. *See id.* at 632; *see also Scott v. First State Ins. Co.*, 155 Wis. 2d 608, 613, 456 N.W.2d 152 (1990) (adhering to *Guertin*'s interpretation of § 893.07).[5]

¶ 20.    Therefore, the place of the tortious injury (hereinafter "place of injury test") is the decisive factor for causes of action sounding in tort: if a party is injured outside the state of Wisconsin, the injured's claim in tort is a "foreign cause of action." Once a cause of action is determined to be "foreign," Wis. Stat. § 893.07 "adopts as Wisconsin law either the law of the

[5] In *Guertin*, we based our interpretation of Wis. Stat. § 893.07(1) on a Judicial Committee Note which indicated that "[t]he previous provisions of ch. 893 are found in the recreated chapter in the same form that they previously existed or are redrafted only for greater clarity and ease of application except as otherwise noted." As we concluded in that case, this language indicates that the creation of the amended borrowing statute was not intended to alter the test applied by the court to personal injury actions. However, as the *McMahon* court noted, "a different question [is] presented. . .when a case involve[s] a contract rather than a tort. . . ." *McMahon v. Pennsylvania Life Ins. Co.*, 891 F.2d 1251, 1257 (7th Cir. 1989) (referring to *Johnson v. Deltadynamics, Inc.*, 813 F.2d 944, 946 (7th Cir. 1987)). Accordingly, *Guertin*'s interpretation of the legislative history applies only to the test utilized by the court in a personal injury "foreign cause of action" under § 893.07(1) and should not be considered dispositive of contract cases arising under that same statute.

state where the cause of action arose or Wisconsin's law, whichever is shorter." *Guertin*, 141 Wis. 2d at 631.

### B.

¶ 21. Having previously interpreted Wis. Stat. § 893.07's use of the phrase "foreign cause of action" to mean any action where the plaintiff's injury arises outside the forum state, we need only decide how this interpretation comports with causes of action sounding in contract. As the United States Court of Appeals for the Seventh Circuit has noted, this task may be more difficult "in the case of a dispute over a contract, whose 'location' is not easily pinned to a particular state if, for example, as is common, the contract is negotiated in one state, signed in another, and performed in a third." *Johnson*, 813 F.2d at 946.

¶ 22. Moreover, as the district court pointed out in *Terranova v. Terranova*, 883 F. Supp. 1273, 1280 (W.D. Wis. 1995), the application of borrowing statutes to causes of action sounding in contract is "an area of conflicts law generally regarded as 'fraught with ambiguity.' " (quoting John W. Ester, *Borrowing Statutes of Limitation and Conflict of Laws*, 15 U. Fla. L. Rev. 33, 48 (1962)). The truth of this proposition is made evident by the circuit court's rationale in this case and the parties' arguments on appeal.

¶ 23. The circuit court applied the "center of gravity" test to conclude that Abraham's lawsuit was a "foreign cause of action" because the parties' most significant contacts involving the insurance contract were with the state of Florida. In doing so, the court followed the decision of the eastern district in *Office Supply Co. v. Basic/Four Corp.*, 538 F. Supp. 776, 781–82 (E.D. Wis. 1982), which employed the "center of gravity" test in a contract action.

¶ 24. Abraham also argues that the "center of gravity" test is the proper approach, but seeks a different result under that rule. He contends that Wisconsin, not Florida, has the most significant contacts with the underinsured motorist contract in this case because Abraham is a Wisconsin insured, General Casualty is a Wisconsin insurer with an agent located in Wisconsin, and because the insurance contract was negotiated and issued in Wisconsin. In the alternative, Abraham argues that a court could apply an altogether different test—one which pinpoints the location of the final significant event giving rise to the action. This test was employed by the western district in *Terranova*, 883 F. Supp. at 1280–81, and will be discussed in more detail in Part II(C).

¶ 25. Finally, General Casualty offers yet another view on the proper application of Wis. Stat. § 893.07 to contract actions. General Casualty disagrees with the circuit court's use of the "center of gravity" test, arguing that it subverts the public policy behind § 893.07 to employ such an analysis. Instead, General Casualty would have this court adopt the "place of injury" test solely for those contract claims which are intertwined with or necessitate an underlying tort, such as the uninsured/underinsured motorist claim involved here. Under this interpretation—one which General Casualty contends will establish a "bright-line rule" that would "provide litigants with certainty"—the place of the *tortious* injury would be dispositive when applying § 893.07 to contract claims that rely upon an underlying tort.

¶ 26. We wade into this morass of arguments and precedent by examining first the "place of injury" test in a contract setting. As an initial matter, it is difficult to see how the adoption of a limited "place of injury"

test, solely for those contract actions that are based upon an underlying tort, will establish a bright-line rule for this area of conflicts law. To the contrary, this approach will almost certainly necessitate further litigation and future decisions by this court to determine the proper standard for contract actions that remain wholly separate from tort law.

¶ 27. More importantly, however, to focus exclusively on the underlying tortious injury—in this case the automobile/bicycle accident in Florida—would be to ignore the indispensable fact that Abraham's claim arises from the alleged breach of an underinsured motorist insurance policy. *See Sahloff v. Western Casualty & Surety Co.*, 45 Wis. 2d 60, 70, 171 N.W.2d 914 (1969) ("We think it clear the action by an insured against his insurer under the uninsured [or underinsured] motorist endorsement is an action on the policy and sounds in contract although in order to recover the insured must prove the negligence of an uninsured motorist.").

¶ 28. In other words, Abraham's "injury," for purposes of this case, arose not from the car accident in Florida, but from the alleged breach of contract by General Casualty. Although it is clear that Abraham's claim against General Casualty would not have come to fruition without the injury in Florida, it is also true that his claim would not have arisen without the subsequent alleged breach of contract—in this case, General Casualty's choice to withhold underinsured motorist benefits. Accordingly, we decline to adopt a limited version of the "place of injury" test for contract claims of this sort.

¶ 29. Given the complex nature of this area of conflicts law, the circuit court's use of the "center of gravity" or "significant contacts" test is certainly

307

understandable. However, we also disagree with this approach. We have previously rejected this option in a tort setting, *see Guertin*, 141 Wis. 2d at 626–32, and we do so again today in the contracts context. In declining to employ a significant contacts analysis in *Guertin*, we were persuaded by the reasoning of the United States Court of Appeals for the Seventh Circuit in *Johnson*, 813 F.2d 944, which, like *Guertin*, held that the place of injury controls the determination whether a cause of action in tort is "foreign" for purposes of Wisconsin's borrowing statute. The Seventh Circuit stated:

> Indeed, [Wis. Stat. § 893.07] would add little or nothing to the common law of Wisconsin if by the use of the expression "foreign cause of action" the legislators meant to require the courts to go through their usual conflict of laws analysis in deciding whether the foreign period of limitations is a bar.

*Id.* at 946.

¶ 30.   We find this statement to be equally applicable to actions sounding in contract. Not only is the "center of gravity" test better left for the resolution of substantive conflict of law questions, *see Guertin*, 141 Wis. 2d at 630–31, but adopting such a method would produce "the incongruous result of the Wisconsin legislature making a choice-of-law determination through enactment of section 893.07, only to be followed by the court's independent analysis based on the center-of-gravity approach to determine if the action falls within the 'foreign cause of action' parameters of the statute." Donna Mae Endreson, Comment, *Wisconsin's Borrowing Statute: Did We Shortchange Ourselves?*, 70 Marq. L. Rev. 120, 128 (1986). *See also McMahon*, 891 F.2d at

1258 (criticizing use of the "center of gravity" test in a contract action).[6]

¶ 31. Considering that one of the foremost policies advanced by a borrowing statute such as Wis. Stat. § 893.07 is the "avoidance of uncertainty in assessing the timeliness of bringing an action in this state without the necessity of a court hearing to make such a determination, thereby preserving scarce judicial resources," *Guertin*, 141 Wis. 2d at 631–32, such an approach would be particularly inappropriate. Therefore, we also decline to adopt the "center of gravity" test, as employed by the circuit court in this case, and by the eastern district in *Office Supply*, 538 F. Supp. at 781–82, for actions sounding in contract.

## C.

¶ 32. Instead, we are persuaded by the reasoning employed in *Terranova*, 883 F. Supp. at 1280–81. In *Terranova*, litigation ensued between family members after their family-owned corporation was split into a Wisconsin corporation and a California corporation. The split resulted in a number of complex transactions between the two groups, including an agreement by contract to indemnify and hold each other harmless

---

[6] As mentioned, *McMahon*, 891 F.2d 1251, also interpreted Wisconsin's borrowing statute in the context of a contract dispute. *See id.* at 1257–58. However, *McMahon* presented a unique situation that is not before this court. There, the United States Court of Appeals for the Seventh Circuit found the plaintiff's contract action for a breach of the implied duty of good faith and fair dealing in his employment contract to be "foreign" because the foreign jurisdiction was "the only jurisdiction involved [that recognized] the covenant of good faith and fair dealing as a separate theory of liability in employment contract cases." *Id.* at 1259. This situation is not present in this case.

from and against fifty percent (50%) of the liabilities arising out of the activities of the companies prior to the breakup. *See id.* at 1276. After the state of California performed a use tax audit of the California corporation relating to equipment purchased prior to the split, the California plaintiffs filed suit in Wisconsin seeking indemnification from the Wisconsin defendants for the tax liabilities.

¶ 33.  The defendants argued that the plaintiffs' contract claims were "foreign" causes of action such that California's statute of limitations for actions sounding in contract, shorter than the six-year period allowed in Wisconsin, would apply to render the plaintiffs' claims untimely. *See id.* at 1275. After rejecting the analysis set forth by the eastern district in *Office Supply*, 538 F. Supp. 776, and distinguishing the case from *McMahon*, 891 F.2d 1251, the *Terranova* court employed the analysis set forth in *Mack Trucks, Inc. v. Bendix-Westinghouse Automotive Air Brake Co.*, 372 F.2d 18 (3d Cir. 1966), to determine whether the plaintiffs' contract claims were "foreign" within the meaning of Wis. Stat. § 893.07.

¶ 34.  In *Mack Trucks*, also involving a claim for indemnification, the United States Court of Appeals for the Third Circuit held that the cause of action "arises where as well as when the final significant event that is essential to a suable claim occurs." *Id.* at 20 (citations omitted). As the *Terranova* court stated:

> In *Guertin*, the [Wisconsin Supreme] court made the logical choice of the "place of injury" as the determinative factor whether a particular tort is a "foreign cause of action" because "[a] tort is not complete till the victim is injured." *Johnson*, 813 F.2d at 945–46. In the contracts context, the parallel event is the breach, the "final significant event that is

essential to a suable claim." *Mack Trucks*, 372 F.2d at 20.

*Terranova*, 883 F. Supp. at 1280–81. Because the alleged breach occurred in Wisconsin, the plaintiffs' claims were not "foreign," and were timely filed under Wisconsin's six-year statute of limitations. *See id.* at 1281–82.

■

¶ 35.    We agree with the reasoning of the *Terranova* court, and hereby adopt its standard for all causes of action sounding in contract. This standard is not only consistent with *Guertin's* interpretation of Wis. Stat. § 893.07, but also clarifies how that interpretation applies to causes of action sounding in contract where it is frequently difficult to attach the plaintiff's contractual "injury" to any one locale. Therefore, a claim sounding in contract is a "foreign cause of action" when the final significant event giving rise to a suable claim occurs outside the state of Wisconsin.[7] Resolu-

---

[7] We recognize that in certain factual situations not present here, even this test would not be without ambiguity. However, as with any judicial standard, no one "test" can give complete certainty to future litigants. On balance, we conclude that this is the most appropriate standard for determining whether a cause of action sounding in contract is "foreign" for purposes of Wisconsin's borrowing statute.

The concurrence would have us go further, in order to establish an all-pervasive standard for determining where the breach occurs in all contract actions that might come before this court, or any other Wisconsin court, in the future. *See generally* concurrence. To this end, the concurrence enlightens the court with a number of examples, poses a series of extraneous questions, and labels this opinion as "vague," "inaccurate" and potentially "inconsistent"; yet the concurrence fails to provide a "standard" of its own. *See id.* We expressly decline the invitation

tion of the issue in this case turns on a determination of where the final significant event giving rise to Abraham's suable claim occurred.

## III.

¶ 36. In this case, the alleged breach of contract occurred in Wisconsin when General Casualty denied the underinsured motorist benefits requested by Abraham. Therefore, if the alleged breach is the last significant event giving rise to Abraham's suable claim, his cause of action would not be "foreign" within the meaning of Wis. Stat. § 893.07. However, at oral argument General Casualty asserted that the final significant event giving rise to a suable claim was the accident in Florida. According to General Casualty, nothing occurred after the accident which would be a "suable event."

¶ 37. Apparently consistent with this argument is General Casualty's contention that no breach of contract has occurred in this case. Counsel for General Casualty asserts that the mere denial of an initial request for underinsured motorist benefits does not constitute a breach. Rather, a breach occurs when the insurer denies benefits to the insured despite a determination that the insured is truly entitled to a benefit. We find these arguments to have little merit for purposes of this case.

¶ 38. General Casualty confuses the ultimate merits of a breach of contract argument with a sufficient allegation of breach. Abraham has a "suable claim" for breach of contract when his request for benefits is denied by General Casualty, regardless of

---

of the concurrence to address the various scenarios that might arise in future cases.

whether he eventually succeeds on the merits of that claim. More importantly, Abraham would not have had a cause of action against General Casualty absent the insurer's initial denial of benefits. Common sense dictates that Abraham would not file, and indeed could not sustain, a lawsuit against his insurer for denial of benefits unless the insurer had first denied his request for coverage. Therefore, we conclude that the last significant event giving rise to Abraham's suable claim was not the accident in Florida, but rather the alleged breach of contract by General Casualty in Wisconsin.

## IV.

■

¶ 39.   Because Abraham's breach of contract claim is not a "foreign cause of action," the borrowing statute does not apply to his claim, and the timeliness of his action will be determined by Wisconsin's six-year period for commencing an action sounding in contract. *See* Wis. Stat. § 893.43.

¶ 40.   As mentioned above, the alleged breach of contract by General Casualty occurred at the earliest in October 1990. Abraham subsequently filed his claim on September 30, 1994. Therefore, Abraham's action falls well within the six-year period provided under Wisconsin law, *see CLL Assocs. Ltd. Partnership v. Arrowhead Pacific Corp.*, 174 Wis. 2d 604, 607, 497 N.W.2d 115 (1993) (holding that a contract cause of action under Wis. Stat. § 893.43 accrues at the moment the contract is breached), and his cause of action for breach of contract may proceed accordingly.

*By the Court.*—The order of the circuit court is reversed, and the cause is remanded to the circuit court for further proceedings consistent with this opinion.

¶ 41. ANN WALSH BRADLEY, J. (*concurring*). Although I join the opinion of the court, I write separately because the majority neglects to provide adequate guidance to courts and litigants in the application of the "last significant event" test.

¶ 42. This case presents the court with the question of whether a Wisconsin insurance company's refusal to pay benefits arising from a Wisconsin insured's personal injury in the State of Florida may constitute a "foreign cause of action" pursuant to Wis. Stat. § 893.07 (1993–94), requiring application of Florida law. In answering this inquiry, the majority adopts, without significant explanation, the "last significant event" test set forth in *Terranova v. Terranova*, 883 F. Supp. 1273 (W.D. Wis. 1995), for determining the proper state's statute of limitations laws to be applied to the contractual dispute.

¶ 43. Unfortunately for future litigants, the "last significant event" inquiry is easily resolved under the facts of this case. General Casualty is a Wisconsin corporation. Abraham is a Wisconsin resident. The negotiation and purchase of the insurance contract took place entirely within Wisconsin. Similarly, General Casualty's decision to refuse to pay Abraham's claim and the subsequent conveyance of that decision to Abraham also occurred in Wisconsin. Thus, every significant factor that might be considered determinative in a "last significant event" test argues in favor of applying Wisconsin law to this case.

¶ 44. Subsequent cases, however, may not present themselves in such an accommodating manner. In adopting the "last significant event" test based on these homogenous facts, the majority not only fails to provide our courts with a cogent set of rules or standards with which to evaluate breach of contract cases that more

314

directly implicate the interstate sale of insurance contracts or the mobile nature of purchasers, but also labels any such inquiry "extraneous." I fail to see how providing our courts with sufficient guidance in applying a test which the majority adopts as the substantive law of this state is in any way an "extraneous" inquiry. A series of hypotheticals may be illustrative of my concern.

¶ 45. First, a Minnesota insurance company sells a policy to a Wisconsin resident and later denies her claim in writing via a letter mailed from Minnesota. Second, the same Minnesota insurance company instead mails its decision to deny coverage to an agent in Wisconsin, who then copies the letter to the Wisconsin insured. Third, a Wisconsin insurance company sells a policy in Wisconsin to a Minnesota resident who travels through the state. The Wisconsin company then denies a claim by calling the Minnesota insured when he again passes through the state of Wisconsin.

¶ 46. In each of these scenarios we are left with the same question: if the breach of contract is the last significant event, as the majority and *Terranova* indicate, where does that breach occur? Does it occur in the state where the party in breach is located? Does it occur in the state wherein the injured party resides? Does it occur in the state where the insurance contract was negotiated or purchased? Does it occur in the state from which the breach is communicated? Any one of these inquiries might be the dispositive question in an attempt to determine in which state the breach of contract or "last significant event" occurred. Yet, our courts are left to speculate.

¶ 47. Alternatively, it is possible that the majority intends our courts to consider each of the questions above and then reach a decision based on the totality of

circumstances. If this is indeed the intent of the majority, such reasoning is inconsistent with the majority's rejection of the "center of gravity" test which employs a similar totality of circumstances approach.

¶ 48.  Finally, I note that the majority explicitly rejected application of the "place of injury" and "center of gravity" tests on the grounds that such tests would overuse scarce judicial resources and "almost certainly necessitate further litigation and future decisions by this court to determine the proper standard for contract actions that remain wholly separate from tort law." Majority op. at 307. Yet, the majority acknowledges in relation to the "last significant event" test that "in certain factual situations not present here, even this test would not be without ambiguity." The majority attempts to justify its failure to resolve this ambiguity by then noting, "[h]owever, as with any judicial standard, no one "test" can give complete certainty to future litigants." Majority op. at 311, fn.7

¶ 49.  This contention is simply inaccurate. The majority's failure to lay out the parameters of the "last significant event" test in contract actions does not mean that bright-line rules, or even a set of standards that might appropriately be applied, do not exist. Rather, it indicates a failure by the majority to consider the future ramifications of its vague opinion on our courts and litigants.

¶ 50.  I agree with the majority's conclusion that Wis. Stat. § 893.07(1) governs contract actions and with its adoption of the "last significant event" test. However, the majority errs when it assumes such a conclusion without examination or explanation and when it fails to set out sufficient standards of application that can assist our courts and guide expectations of potential litigants. Accordingly, I concur.

316

¶ 51.   I am authorized to state that Chief Justice Shirley S. Abrahamson and Justice Janine P. Geske join this opinion.